MARION HUDSON, PLAINTIFF-RESPONDENT, v. DANNIE BENJAMIN HUDSON, DEFENDANT-APPELLANT, AND FRANCES COSTELLO HUDSON, INTERVENOR-APPELLANT.

Argued December 18, 1961—Decided February 19, 1962.

*Mr. A. Howard Finkel* argued the cause for plaintiff-respondent (*Mr. Henry Goldhor*, attorney).

*Mr. Morris N. Hartman* argued the cause for defendant-appellant and intervenor-appellant.

The opinion of the court was delivered by
FRANCIS, J. Plaintiff Marion Hudson sought a judgment for arrearages of alimony due from her former husband, Dannie Hudson, under a divorce decree she obtained in the State of Alabama on October 9, 1958. In attempting to avoid payment, defendant contended that the divorce was

obtained by fraud, that the separation agreement between the parties fixing the alimony payments, which was incorporated in the decree, was void as against public policy, and that the award for periodic payments of alimony being modifiable by the courts of Alabama did not have such quality of finality as would permit a New Jersey court to allow recovery for the sum of the arrearages. The Chancery Division rejected these defenses and entered judgment for $750, representing the amount in default when the complaint herein was filed.

Subsequent to the divorce, Dannie Hudson married his present wife, Frances Costello Hudson, since which time they have lived together in Irvington, New Jersey. She intervened in this action seeking a declaration respecting the validity of her marriage. Upon determining in the main case that the Alabama decree was valid and entitled to full faith and credit, the trial court dismissed her complaint. Defendant sought a review in the Appellate Division, but we certified the matter before hearing there.

It was indicated at the oral argument that a further aspect of the litigation between plaintiff and defendant remains undecided. Defendant asserts he took the position below that even if the divorce decree was valid and the arrearages sufficiently final to warrant judgment, his circumstances as well as those of his former wife have so changed since the Alabama divorce that the Chancery Division, having jurisdiction of the parties, should reduce the weekly allowance of alimony. That such issue was presented is not at all clear from the record before us, although the pretrial order does say that the validity of the Alabama decree and of the claim for arrearages is to be determined first, and other questions reserved. In any event, in order not to interfere at this late date with the plan pursued by the parties with the consent of the trial court, upon resolution of the issues presented to us, we shall order a remand for completion of the undecided matter. It must be noted, however, that we do not approve of piecemeal adjudication

of controversies. Our rules (with a narrow exception, not applicable here; see *R. R.* 4:55–2) prohibit direct appeal unless final judgment has been entered disposing of all issues as to all parties. *R. R.* 1:2–1; 2:2–1. Consent of counsel cannot supply a basis for violation of the rule.

At the outset of our consideration of the appeal, it should be noted that at the oral argument defendant abandoned his attack on the portion of the decision below which adjudged the Alabama divorce decree valid and required full faith and credit to be given to it. Therefore, the issues submitted for our determination are (1) legality of the pre-divorce separation agreement, and (2) whether the alimony arrearages under the foreign decree have sufficient finality to form the basis for a judgment in New Jersey. Their solution requires a short factual statement.

Plaintiff and defendant were married on August 9, 1950. One child, a daughter, was born of the marriage. At the time of separation their marital home was in Staten Island, New York. On September 30, 1958, while living apart, they executed an agreement in New York State, under which the husband agreed to pay the wife $50 a week for her support and $20 additional for the child. Both parties were represented by counsel at the time and the wife acknowledged in the contract that she had received the independent advice of her own attorney. The agreement provided, among other things:

"8. In case the parties are hereafter divorced by decree of any court, the terms and provisions of this Agreement shall be incorporated in such decree and become a part of such decree, and this Agreement shall survive such decree. Notwithstanding such incorporation this Agreement shall not be merged in such decree, but shall survive the same and shall be binding and conclusive on the parties for all time. Each party agrees to submit to the *in personam* jurisdiction of any court in which the other party commences an action for divorce and to appear personally in any such action.

9. Each party will, at any time and from time to time, execute and deliver any or all other instruments or papers that the other party may reasonably require to give effect to the provisions of this Agreement."

Thereafter, plaintiff went to Alabama and instituted suit for dissolution of the marriage. Defendant voluntarily entered an appearance in the action. The divorce was granted, the separation agreement was incorporated in the decree in accordance with the stipulation set forth above, and the parties were ordered to "abide by and carry out" its terms with respect to support. The decree recited also that the agreement was not merged therein but survived as an independent compact.

Defendant now contends that the separation agreement, particularly as respects support money, was contrary to public policy and therefore void. More specifically, he claims that the purpose of the contract was to promote or facilitate or to buy and sell consent to a divorce. The basis for the assertion is the clause therein binding each party "to submit to the *in personam* jurisdiction of any court in which the other party commences an action for divorce and to appear personally in any such action."

The trial judge declined to consider the legal sufficiency of the argument. He pointed out that defendant had voluntarily submitted to the jurisdiction of the Alabama court and had made no challenge there either to the validity of the separation agreement or to its inclusion in the divorce decree as the basis for adjudication of the matter of liability for support. And having found the decree to be unimpeachable and entitled to full faith and credit in New Jersey, he held that determination encompassed the entire foreign judgment, not just the portion relating to the dissolution of the marriage. That holding was sound. Hudson had the same opportunity to contest the support settlement in Alabama as he did the divorce itself. His failure to oppose inclusion of the agreement in the decree or to litigate the issue whether the provision for support represented a fair and equitable disposition of the problem, bars the attack he now attempts to make on it in New Jersey. See *Woodhouse v. Woodhouse,* 20 *N. J. Super.* 229, 238 *(App. Div.* 1952), affirmed 11 *N. J.* 225 (1953);

*id.* 17 *N. J.* 409 (1955); *Graham v. Hunter,* 266 *App. Div.* 576, 42 *N. Y. S. 2d* 717 (*App. Div.* 1943).

In any event, defendant's charge that the agreement is contrary to public policy because designedly promotive of divorce, is without merit.

 Agreements between separated spouses, executed voluntarily and understandingly for the purpose of settling the pressing problem of support for a wife and children, are not *per se* illegal. Experience has shown that disputes over *quantum* of maintenance and other monetary controversies frequently constitute the bitterest element of matrimonial litigation. Consequently it may be said that rather than frown upon agreements in that area, the law encourages them. So long as the accord is reached without fraud or duress or imposition, and represents a fair and equitable allowance of alimony or support money, it carries the *imprimatur* of legality. *Woodhouse v. Woodhouse,* 20 *N. J. Super., supra,* at *p.* 238; 1 *Nelson, Divorce and Annulment* (*2d ed.* 1945), §§ 13.17, 13.23; 6 *Williston on Contracts* (*rev. ed.* 1938), § 1743. In fact, this court less than two years ago departed from previously existing precedent and declared that such agreements may be made the subject of an order for specific performance. *Schlemm v. Schlemm,* 31 *N. J.* 557 (1960). A compact of that nature does transgress public policy, however, and becomes unenforceable when it is a device to promote a divorce between the parties. *Staedler v. Staedler,* 6 *N. J.* 380, 389 (1951); *Nelson, supra,* § 13.22.

 The rules just stated as the law of New Jersey are equally applicable in New York, where the challenged agreement was made and by the law of which its validity must be determined. *Staedler v. Staedler, supra,* at *p.* 389; *Meyer v. Meyer,* 124 *N. J. Eq.* 198 (*Ch.* 1938); *Hettich v. Hettich,* 301 *N. Y.* 447, 95 *N. E. 2d* 40 (*Ct. App.* 1950); *In re Rhinelander's Estate,* 290 *N. Y.* 31, 47 *N. E. 2d* 681 (*Ct. App.* 1943); *Schley v. Andrews,* 225 *N. Y.* 110, 121 *N. E.* 812 (*Ct. App.* 1919); *Roberts v. Roberts,*

206 *Misc.* 779, 134 *N. Y. S. 2d* 877 (*Sup. Ct.* 1954);
*Fuqua v. Fuqua, Sup.,* 86 *N. Y. S. 2d* 245 (*Sup. Ct.*
1949); *In re Estate of Nichols,* 201 *Misc.* 922, 107 *N. Y. S.
2d* 311 (*Surr. Ct.* 1951).

■ Examination of the written accord does not support
the charge that it is or was intended to be promotive of
divorce. The support payments are not contingent upon
the seeking or procurement of such a judgment. There is
nothing in the language suggesting that either spouse con-
sented to a divorce, or agreed not to contest a suit brought
by the other to obtain one. Both parties remained fully
free to seek a divorce or refrain from doing so, or to contest
such action if commenced by the other. The mutual stipu-
lation that a general appearance would be entered in any
jurisdiction where a divorce action might be instituted by
one spouse, did not impose the taint of illegality. The
husband and wife relinquished none of the freedom to con-
test the suit, nor did either thereby even inferably consent
to a *divorce,* as distinguished from mere consent to meet
the other in any forum chosen for prosecution of the quest
for divorce. *Cf. Graham v. Hunter, supra; Gershman v.
Lafayette Nat. Bank,* 178 *Misc.* 693, 35 *N. Y. S. 2d* 4
(*Sup. Ct.* 1942); *In re Estate of Fleischer,* 192 *Misc.* 777,
80 *N. Y. S. 2d* 543 (*Surr. Ct.* 1948).

Defendant relies upon *Staedler v. Staedler, supra; Mont-
gomery v. Wilmerding,* 26 *N. J. Super.* 214 (*Ch. Div.*
1953), and *Reed v. Robertson,* 195 *Misc.* 885, 91 *N. Y. S.
2d* 583 (*Sup. Ct.* 1949), reversed 276 *App. Div.* 902,
94 *N. Y. S. 2d* 905 (1950), reversal affirmed 302 *N. Y.* 596,
96 *N. E. 2d* 894 (*Ct. App.* 1951). They are readily dis-
tinguishable. In *Staedler* the agreement not only com-
pelled the wife to enter "any appearance required in the
divorce proceedings to be instituted" by the husband "with-
out delay," but also provided that if she *opposed* the divorce
proceedings the support and property settlement arrange-
ments "shall become inoperative, and the monies deposited
thereunder shall be returned" to the husband. In *Mont-*

*gomery* the situation was most unusual. The separated husband and wife made an agreement reciting that the wife was about to institute a divorce action in Nevada. The husband agreed to enter an appearance therein, and the wife agreed to pay him $50 a week during their joint lives, the payments to be (and were) guaranteed by the father of the wife. The divorce was obtained in Nevada 24 days later. When the agreement was attacked, the Chancery Division held that its obvious object was the divorce of the parties, and so contrary to public policy. We agree on the facts there the conclusion was inescapable that the wife and her father were buying a divorce from the husband. No such inference can be drawn in the present instance. *Reed v. Robertson* is very much the same as *Montgomery,* although the facts are not set out fully in the opinion of the trial court or the memorandum of the Appellate Division. It does appear, however, that the parties were separated, that the husband agreed to enter a personal appearance in the wife's Nevada divorce action, and that she would pay him $1,650 a month. The period of payment is not set forth, but after the divorce the wife met the obligation for about 12 years before contesting it. The Appellate Division said it was convinced by the record that the agreement "sued upon, in the light of its background, circumstances and provisions, was an agreement tending to dissolve the marriage of the parties," and therefore void, as violative of public policy. Obviously, these three cases would not suggest or require invalidation of the Hudson agreement.

We come now to the second ground of alleged error in the trial court's ruling. Defendant charges that award of the accrued arrearages for support should not have been entered because under the Alabama decree they did not have the quality of finality with which a foreign judgment must be endowed to require our court to accord it full faith and credit. Reliance is placed on the frequently stated general rule that when a decree for alimony or support payable indefinitely at recurring intervals is granted in a foreign

forum, and under the law thereof the right is reserved to modify or revise the allowance retrospectively, the decree is not binding on the court of a sister state so as to require or permit it to enter judgment for accumulated arrearages. Because the decree is subject to modification in the first forum, it is said not to be invested with the quality of finality required to make it binding on the second forum under the full faith and credit clause of the *United States Constitution.* Article IV, § 1. See *Woodhouse v. Woodhouse,* 17 *N. J.* 409, 417 (1955); *Lea v. Lea,* 18 *N. J.* 1 (1955); 3 *Nelson, Divorce and Annulment, supra,* § 33.46. That rule, the import of which is to make it necessary for the wife to return to the state where the award was made and obtain a final judgment there for the arrearages, is unjustly burdensome and has been the subject of much criticism, particularly where the divorced spouses are present in the state where enforcement is sought, and subject to the jurisdiction of its courts. See Scoles, "Enforcement of Foreign 'Non-Final' Alimony & Support Orders," 55 *Colum. L. Rev.* 817 (1953); Comments, 26 *Chi. L. Rev.* 136 (1958); Comments, *Wash. U. L. Q.* (1956) 246.

██ Recognition of the difficulty has fostered adoption of the doctrine that where the second forum has the necessary *in personam* jurisdiction, every reasonable implication against existence of power to modify or revoke unpaid arrearages must be accepted, unless the authority of the out-of-state court to do so is beyond question. *Lea v. Lea, supra; Whitehead v. Villapiano,* 16 *N. J. Super.* 415 (*App. Div.* 1951); *Sistare v. Sistare,* 218 *U. S.* 1, 54 *L. Ed.* 905 (1910). Moreover, assuming that where the right exists to modify or even cancel arrearages, the foreign judgment lacks the finality to bring it within the *mandatory* recognition feature of the full faith and credit clause (compare Justice Jackson's view in *Barber v. Barber,* 323 *U. S.* 77, 89 *L. Ed.* 82 (1944), concurring opinion 323 *U. S.,* at p. 87), it must be remembered that that clause does not say our courts are bound *not* to enforce it. See Traynor, J.,

in *Worthley v. Worthley,* 44 *Cal.* 2d 465, 283 *P.* 2d 19, 22 (*Sup. Ct.* 1955). Therefore, the public interest in protecting and preserving for a wife and children the support granted by a sister state, suggests that on principles of comity or judicial courtesy its judgment should be accorded the fullest possible recognition. Accordingly, this proposal projects itself in cases where the enforcement state has personal jurisdiction over the parties: recovery should be allowed for the total of the arrearages, providing no proceeding has been brought prior thereto by the obligor in the foreign jurisdiction seeking modification or cancellation of the arrearages. In such action, however, the courts of the enforcement state should apply the applicable legal and equitable principles of the original forum with respect to any claim for modification or cancellation. See *Worthley v. Worthley, supra;* Schaefer, J., in *Light v. Light,* 12 *Ill.* 2d 502, 147 *N. E.* 2d 34 (*Sup. Ct.* 1957); *Woodhouse v. Woodhouse,* 17 *N. J.* 409, at *p.* 415 (1955); 26 *Chi. L. Rev., supra; Wash. U. L. Q., supra;* 55 *Colum. L. Rev., supra.* Such solution would appear to be consistent with constitutional principles and in keeping with the spirit of the New Jersey Legislature as revealed by the Uniform Reciprocal Enforcement of Support Act, *N. J. S.* 2A:4–22 *et seq.,* and *N. J. S.* 2A:34–23, authorizing alimony and maintenance orders in this State after divorce judgments have been obtained in foreign jurisdictions.

■■■■ But in the present case there is no need to resolve the question of authority to grant judgment for the unpaid installments under a foreign decree which permits retroactive modification. It seems plain from the Alabama cases that installments of alimony become vested as they accrue and are not subject to revision or cancellation. The most widely cited case on the subject is *Epps v. Epps,* 218 *Ala.* 667, 120 *So.* 150 (*Sup. Ct.* 1929). There the Supreme Court, in referring to the trial court's authority to alter alimony judgments, said:

"These facts merely confirm the purpose of the decree as implied from its form, one based on future earnings for the continued maintenance of the wife, and hence dependent upon such earnings for payment. There was no error in holding it subject to modification for good cause.

But the court went further, and undertook to avoid the installments accrued before the petition to modify was presented.

This was beyond his power. These past-due installments had become a debt of record, a vested estate of the wife, beyond the power of the court to destroy, whatever the hardship to the petitioner. His jurisdiction to modify the decree is limited to its prospective effect."

See also *Scott v. Scott,* 90 *So. 2d* 813 (*Ala. Sup. Ct.* 1956); *Green v. Green,* 239 *Ala.* 407, 195 *So.* 549 (*Sup. Ct.* 1940); *Rochelle v. Rochelle,* 235 *Ala.* 526, 179 *So.* 825 (*Sup. Ct.* 1938). Since under the Alabama law plaintiff had a vested right in the arrearages, it was entirely proper for the Chancery Division to enter judgment for the total arrearages. *Robison v. Robison,* 9 *N. J.* 288, 291 (1952); *Conwell v. Conwell,* 3 *N. J.* 266, 275 (1949); *Bolton v. Bolton,* 86 *N. J. L.* 622, 625–627 (*E. & A.* 1914).

Accordingly, the judgment appealed from is affirmed and the cause is remanded to the trial court for completion of any phase of the controversy which was reserved.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.