79 N.J. Super. 308 (1963)
191 A.2d 491
CLAIRE GENOLA, PLAINTIFF-RESPONDENT,
v.
HERBERT SCHARER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 28, 1963.
Decided May 31, 1963.
*309 Before Judges PRICE, SULLIVAN and LEWIS.
Mr. Burton L. Fundler argued the cause for appellant (Messrs. Mirne and Nowles, attorneys; Mr. Fundler, on the brief).
Mr. Louis P. Introcaso argued the cause for respondent (Mr. Harry Green, of counsel).
The opinion of the court was delivered by LEWIS, J.A.D.
Plaintiff Claire Genola, a former wife of defendant Herbert Scharer, instituted proceedings in the Superior Court, Chancery Division, (1) to compel payment of accumulated arrearages under a New Jersey separation agreement, and (2) to enforce its specific performance under an Alabama decree of divorce which incorporated the terms thereof without a merger.
The trial court rendered judgment, inter alia, in favor of plaintiff in the sum of $2,210, representing payments and *310 interest which accrued subsequent to her remarriage, and denied specific performance in futuro as to "the aforesaid separation agreement referring to the support and maintenance of the plaintiff." Defendant appeals from the final determination as to the aforesaid accrued payments, but does not seek a review of the remaining portion of the judgment which relates to the support and maintenance of the minor children of their marriage.
Defendant contends before this court, as he did at the trial level, that (1) N.J.S. 2A:34-25 precludes the entry of any judicial order in this State with respect to alimony or support accruing after the remarriage of his former wife, and (2) his divorced wife is not entitled to the claimed arrearages under the terms of the Alabama decree because they matured subsequent to her remarriage. Plaintiff counters, in substance, (1) the separation agreement related to support and a property settlement, the terms of which are not "alimony" in a statutory sense, and (2) the foreign judgment, including the unmerged inter partes agreement, should be accorded constitutional "full faith and credit."
The basic facts are not in dispute. The parties were married in New Jersey on May 7, 1939. Nearly 20 years thereafter (March 20, 1959), plaintiff, then Claire Scharer, commenced an action for divorce in the Superior Court, Chancery Division, State of New Jersey, pursuant to N.J.S. 2A:34-2(c). On April 2, 1959 the parties, as "husband and wife," entered into an agreement, reciting that "divers disputes and unhappy differences" had arisen between them, which agreement, among other things, provided for a division of property rights, the support of their three minor children ($40 a week for each child), the mother's custody of the children, and that defendant, "shall, for and towards the support and maintenance of Claire Scharer [plaintiff herein], contribute the sum of $30.00 per week."
After the New Jersey proceedings had been discontinued, plaintiff initiated action in the State of Alabama for the dissolution of the marriage and, on June 4, 1959, an absolute *311 decree of divorce was rendered in her favor by the Circuit Court, Marion County, in that state, which decree concluded with the provision that:
"The terms of the agreement between the parties dated April 2, 1959, are incorporated in this decree by reference, as though fully set forth herein, and the parties are ordered to abide by and carry out the terms of said agreement. The said agreement is not merged with this decree but shall survive the same."
On November 11, 1961 plaintiff became the wife of one Alfred Genola, of Deal, New Jersey. Thereafter defendant (a New Jersey resident), who had also remarried, arbitrarily reduced his weekly remittances, eliminating therefrom any payments toward the support and maintenance of his former wife. The litigation under review then ensued.
There is little doubt that Alabama was a forum state selected for a convenient and expeditious divorce. Defendant, however, voluntarily entered an appearance in the foreign proceedings, filed an answer and waiver, and thereby submitted to the necessary in personam jurisdiction. Accordingly, the judgment of the Alabama court under the facts before us is invulnerable to attack in New Jersey; the jurisdictional issue is res judicata. Sherrer v. Sherrer, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429, 1 A.L.R.2d 1355 (1948); Coe v. Coe, 334 U.S. 378, 68 S.Ct. 1094, 92 L.Ed. 1451, 1 A.L.R.2d 1376 (1948); Johnson v. Muelberger, 340 U.S. 581, 71 S.Ct. 474, 95 L.Ed. 552 (1951). Its decree in the entirety, not just the portion relating to the dissolution of the marriage, is unimpeachable. See Schlemm v. Schlemm, 31 N.J. 557 (1960), and Hudson v. Hudson, 36 N.J. 549 (1962), for a discussion of the federal decisions and the enunciation of legal principles for our guidance in New Jersey.
Hudson involved a claim for arrearages under an Alabama decree which ordered the parties to "abide by and carry out" the terms of a pre-divorce agreement. It was recited in the decree that the contract did not merge therein but survived *312 as an independent compact. Said our Supreme Court in that case (at page 559), "It seems plain from the Alabama cases that installments of alimony become vested as they accrue and are not subject to revision or cancellation," citing with approval Epps v. Epps, 218 Ala. 667, 120 So. 150 (Sup. Ct. 1929). There is a factual distinction, however, between Hudson and the case under review, in that the pending litigation involves arrearages which accumulated subsequent to the wife's remarriage. Such a discernment does not pose a conflict of laws problem, because the declared public policy in Alabama is consonant with the mandate of our statute N.J.S. 2A:34-25 precluding the entry of orders for alimony to a wife who after a judgment of divorce shall remarry. The Supreme Court of Alabama has stated, in Morgan v. Morgan, 211 Ala. 7, 9, 99 So. 185, 186 (1924):
"* * * [W]hile the remarriage of the wife does not ipso facto annul the alimony, it affords a reason for doing so, and that the modification of the existing decree should operate upon the alimony as of the date of the remarriage. This rule also conforms to the reason for same, that is, that the divorced husband should not be forced to support his former wife after she has married another who is able to do so. * * * a court of equity has the power to prorate or apportion same so as to meet the ends of justice, and that the appellee should be paid the portion of the $1,000 covering the year of the remarriage, that is, for the period between the time it started and when she remarried, * * *."
See also the later case of Pope v. Pope, 268 Ala. 513, 517, 109 So.2d 521, 524 (Sup. Ct. 1959), to the same effect.
Moreover, the Alabama court did not attempt to interpret the agreement of April 2, 1959. Its decree made no specific provision for alimony, characterized as such, but in effect left the parties free to pursue the enforcement of their antedivorce agreement before any court of competent jurisdiction. It engrafted by reference the terms of the written engagement as a surviving contractual obligation.
The contracting parties are now before our courts, the jurisdiction where their contract was originally executed and delivered, in an action for specific performance and for a *313 judgment respecting payments thereunder which are in default. The law of this State should govern the interpretation and effect of this document, on the principle of lex loci contractus. Note comments of this court as to the application of that principle in Bankers Trust Co. of N.Y. v. Crane, 78 N.J. Super. 447, 451 (App. Div. 1963).
We turn, therefore, to the terms of the aforesaid agreement which are pertinent for our consideration. The parties are identified as "husband and wife." The provision for the wife's support is indefinite and there is no reference therein that evinces an intent that payments to the wife should continue during her lifetime. The instrument does not mention eventualities such as divorce or the wife's remarriage. The husband agreed to release any interest in certain chattels, furniture and personal effects, and to pay his spouse $3,000 upon the sale of the homestead property. Additionally, clause 4 thereof reads:
"It is further agreed that as part of this agreement, Claire Scharer relinquishes all interest that she may have in the partnership which the parties have together known as Modern Printing Industries and that she will execute any additional papers that may be needed to effectuate the transfer of her interest therein."
The court, in rendering judgment for the plaintiff, was mindful of N.J.S. 2A:34-25 and recognized the technical dissimilarity between "alimony" in a statutory sense and a provision for "support" in a husband-wife settlement agreement that had not merged in a divorce decree. The trial judge was satified that plaintiff, in addition to her right of support as a wife, had "an interest in the company" (Modern Printing Industries) which was a "sufficient consideration to support the agreement." He determined that judgment should be entered against the defendant for the aforesaid amount of $2,210, representing accumulated arrearages and stipulated interest "due under that portion of the separation agreement referring to the support and maintenance of the plaintiff," but denied specific performance in futuro saying:
*314 "* * * I think that the fair and equitable determination to make in the light of her present marriage is that from this date forward the $30.00 a week payment of the support agreement for her support be cancelled; or, stated in another manner, that that portion of this agreement be not specifically enforced."
Hudson (36 N.J., at page 555) makes it clear that a voluntary agreement between separated spouses may be specifically enforced to the extent that the terms thereof are reached "without fraud or duress or imposition, and represents a fair and equitable allowance of alimony or support money."
In Schlemm (31 N.J., at page 580) the following language employed by this court in Flicker v. Chenitz, 55 N.J. Super. 273, 292-293 (App. Div. 1959), certification granted 30 N.J. 152 (1959), appeal dismissed by consent 30 N.J. 566 (1959), was approvingly quoted:
"As we noted above, the public policy of this State requires that orders touching the support of a wife be subject to modification upon changes in the circumstances of the parties. Therefore the decree of specific performance which will issue under the mandate to follow this opinion will provide that the wife or the estate of the husband may apply to the court for modification of the decree if there is a material change of circumstances, such as the emancipation of the children or the remarriage of the wife. See Restatement, Contracts, § 359(2), p. 638, and 5 Williston, Contracts (rev. ed. 1937), § 1425, p. 3993, for the power of a court to award specific performance on such terms and conditions as justice requires, even to the extent that the performance ordered is not identical with that promised in the agreement. See also King v. Ruckman, 24 N.J. Eq. 556. 565 (E. & A. 1873); 5 Corbin on Contracts (1951), § 1137, p. 612, text at n. 12. Cf. Ferreira v. Lyons, 53 N.J. Super. 84, 89 (Ch. Div. 1958)."
The agreement in the case sub judice dealt with more than the satisfaction of a marital obligation to support, and the record before us does not furnish any reason in fact or in law for disturbing the equitable solution reached by the Chancery Division.
Affirmed.