144 N.J. Super. 444 (1976)
365 A.2d 1382
IDA STEIN, PLAINTIFF-RESPONDENT,
v.
EDWIN L. FELLERMAN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 5, 1976.
Decided October 26, 1976.
*446 Before Judges BISCHOFF, MORGAN and COLLESTER.
Mr. S.M. Chris Franzblau argued the cause for appellant (Messrs. Franzblau, Falkin & DiMarzio, attorneys; Mr. Paul A. Friedman on the brief).
*447 Mr. Lloyd M. Cohen argued the cause for respondent (Messrs. Cohen & Cohen, attorneys).
PER CURIAM.
By a motion filed August 18, 1975 plaintiff wife sought to have defendant, her former husband, adjudged in contempt for failure to comply with the terms of a property settlement incorporated in and made part of a judgment of divorce which became final January 19, 1968. Specifically, plaintiff alleged that defendant had failed to make payments to her in the amount of $1,040, representing support from September 26, 1969 to March 27, 1970, the date of her remarriage, and $12,203.67, representing arrearages for payments on account of a mortgage on the former marital residence which accrued between October 1, 1969 and July 31, 1975. The trial judge entered an order fixing arrearages in the sums demanded by plaintiff. It is from this order that defendant appeals.
Plaintiff and defendant were married in 1945. Three children were born of this marriage. On May 18, 1967 the parties entered into a "Property Settlement Agreement," the first provision of which reads as follows:
1. This agreement is intended and shall be construed to be a settlement agreement entered into between the parties to settle their property rights and in addition thereto that provisions be made for the support and maintenance of the children and all other rights and obligations growing out of the marriage relation. [Emphasis supplied]
The operative and pertinent provisions of this agreement are summarized as follows:
(a) Defendant agreed to convey his interest in the marital home to plaintiff.
(b) Defendant agreed to pay to plaintiff the sum of $80 a week for her support and maintenance, which payments would cease upon her remarriage.
(c) Defendant agreed to pay to plaintiff $30 per week for the support of each of their three children.
(d) Defendant agreed to pay the principal and interest on the mortgage on the former marital home, as well as property taxes, *448 fire and liability insurance thereon, and repairs up to $300 annually, which payments were to cease when the principal balance due on the mortgage had been reduced to $4,876.56. Defendant's liability for repairs, taxes and insurance was to continue only as long as plaintiff remained unmarried and actually resided on the premises; his liability, however, for mortgage principal and interest would continue notwithstanding plaintiff's remarriage or her death.
This agreement was incorporated in the judgment nisi entered on June 29, 1967. Plaintiff remarried on March 27, 1970. On July 21, 1971 defendant filed a voluntary petition in bankruptcy. Plaintiff was listed as a creditor. On November 8, 1971 an order of discharge of bankrupt was entered.
Defendant contends here, as he did before the trial court, that the adjudication in bankruptcy discharged all provable debts, excluding those representing liabilities "for alimony due or to become due, or for maintenance or support of wife or child." 11 U.S.C.A. § 35(a) (7). Hence, those portions of the agreement pertaining to payments on account of mortgage principal and interest, stipulated in the agreement to survive plaintiff's remarriage and her death, cannot be viewed as alimony or support since they lack the essential attributes thereof and were therefore discharged in bankruptcy. As to the portions of the agreement clearly pertaining to support, those which would terminate on remarriage or death, and which were stated in the agreement to be for her support, defendant contends that N.J.S.A. 2A:34-25 precludes an order requiring payment of arrearages accruing before the remarriage of the donee spouse.
The trial judge, agreeing with plaintiff, concluded that the entire agreement was in the nature of support and alimony and that consequently none of defendant's liabilities accruing thereunder were discharged. Further, he concluded that since the support payments were agreed to by defendant in an agreement incorporated in the divorce judgment, N.J.S.A. 2A:34-25 had no application; that enactment was limited to alimony obligations having their source in court orders, not in agreements to pay support merged into divorce decrees.

*449 The Effect of the Bankruptcy Discharge

Liabilities for "alimony due or to become due, or for maintenance or support of wife or child," are not dischargeable in bankruptcy. Although such obligations survive bankruptcy, those portions of property settlements in marriage dissolution proceedings not viewed as being in the nature of alimony are dischargeable. Jones v. Tyson, 518 F.2d 678 (9 Cir.1975); see also, Annotation, "Obligation under property settlement agreement between spouses as dischargeable in bankruptcy," 74 A.L.R.2d 758 (1959). The task of determining which obligations are in the nature of alimony and support and which result from a disposition of property is often a difficult one. See, for example, the compilation of conflicting authority in a footnote to Abrams v. Burg, 327 N.E.2d 745 (Mass. Sup. Jud. Ct. 1975). In approaching this task, courts have tried to ascertain the parties' intent as to which portions of agreement or judgment pertained to alimony and support and which effectuated a disposition of property.
Although each agreement must be construed to ascertain the parties' intentions, the cases tend to find that maintenance and support was intended where the form of the payments more closely approximates a normal support arrangement, rather than a lump sum settlement payment. Thus, if the obligation terminates on the death or remarriage of the recipient spouse, or on the death of the donor spouse, and if the obligation is payable in installments over a substantial period, courts tend to rule that maintenance and support, and not a property settlement, was intended. [Abrams v. Burg, 327 N.E.2d at 747]
In Poolman v. Poolman, 289 F.2d 332 (8 Cir.1961), the court held that installment payments on a note secured by a trust deed on the former marital residence where the divorced wife and children were to live were in the nature of maintenance support and therefore not dischargeable. The case does not disclose whether the obligation was to terminate on the former wife's remarriage. See also, Neugebauer v. Neugebauer, 548 P.2d 1032 (Okla. Sup. Ct. 1976).
*450 In Henson v. Henson, 366 S.W.2d 1 (Mo. Ct. App. 1963), the property settlement agreement held to be in the nature of support and hence dischargeable, provided that mortgage payments on the former marital residence would cease on the wife's remarriage. In the present case, however, the mortgage payments were to continue notwithstanding the death or remarriage of the wife  ordinarily an indication of a property settlement rather than a nondischargeable support obligation.
There is no question but that items (b) and (c) of the agreement described above constitutes support for plaintiff and the children of the marriage. The agreement itself states the purpose of those provisions as being support and the obligation owing the former wife in (b) ceases upon her remarriage, clearly identifying the obligation as being one of support. Hence, those two provisions have survived the bankruptcy adjudication.
The problem is, however, whether the obligation reflected in item (d) is also in the nature of support and therefore not discharged, or whether it constitutes part of a property settlement, in which case the bankruptcy adjudication would operate to discharge it. Clearly, all transfers of property or cash can be used for purposes of support, depending upon the recipient's individual needs and inclinations. Nonetheless, transfers of title to a marital residence do suggest a disposition of marital property, particularly when not otherwise designated in the agreement containing provision expressly designed for support. Support could be accomplished simply by permitting the donee spouse to live in the residence with the donor spouse meeting the necessary carrying charges thereof.[1] The obligation contained in *451 item (d), that the husband meet the mortgage payments on the house transferred to the wife pursuant to the agreement until the balance due on the mortgage be reduced to $4,876.56, appears to be part and parcel of the agreement to transfer title to the residence. In other words, the substance of this part of the agreement was that the former wife was to be vested with title to the residence encumbered by a mortgage lien no larger than $4,876.56. Whether such lien reduction was accomplished by a lump sum payment or by installments, as provided in the agreement for the husband's benefit, was of no moment; indeed, provision was made for the prepayment of this obligation. The intent of the agreement, what the plaintiff was to have, is abundantly clear from the agreement itself. The wife was to have the residence, with responsibility for the mortgage limited to the reduced amount; she was to have, as support, $80 a week, an obligation terminable on her remarriage, and the children were each to receive $30 a week for their support.
We, therefore, conclude that the installment payments on account of mortgage principal and interest were not in the nature of support, an item provided for in items (b) and (c), but as part of the agreed disposition of the marital estate. That being so, this obligation was discharged by defendant's bankruptcy.

The Effect of N.J.S.A. 2A:34-25 on Item (b)
At issue here is that portion of the trial court order fixing arrearages in support payments under the property settlement which accrued prior to the wife's remarriage at $1,040, and which, we have already held, survived the bankruptcy adjudication. Defendant husband contends, however, that N.J.S.A. 2A:34-25 precludes awarding a wife who has remarried arrearages in payments of support, even those which accrued prior to her remarriage. N.J.S.A. 2A:34-25 provides:
*452 If after the judgment of divorce the wife shall remarry, the court shall not make any order as to the alimony of such wife except that upon application of the former husband, on notice and on proof of the marriage of the former wife after the judgment of divorce, the court shall modify any order or judgment as to the alimony of the former wife by vacating and annulling any and all provisions in any such order or judgment, or both, directing the payment of money for the support of the former wife.
The broad language of this enactment has been fully reflected in its application, in recognition of the strong public policy against enforcing support orders on behalf of remarried former wives. Clearly, this statute reaches accrued arrearages in alimony which will not be ordered paid after remarriage. Madden v. Madden, 136 N.J. Eq. 132 (E. & A. 1944); see also, Ferreira v. Lyons, 53 N.J. Super. 84 (App. Div. 1958).
Plaintiff, however, contends that this enactment is inapplicable to support provisions contained in a property settlement agreement incorporated into a judgment of divorce, and that the enforceability of such provisions, as distinguished from court orders requiring payment of alimony, are governed by principles set forth in Schiff v. Schiff, 116 N.J. Super. 546, 558 (App. Div. 1971), certif. den. 60 N.J. 139 (1972), and Berkowitz v. Berkowitz, 55 N.J. 564, 569 (1970), and not by the terms of N.J.S.A. 2A:34-25. She points out that all of the cases applying that enactment and cancelling arrearages which accrued prior to remarriage involved statutory alimony and not support obligations voluntarily assumed by the donor spouse in an agreement incorporated in a divorce judgment. The trial judge agreed, fixed the arrearages and ordered defendant to pay them, relying upon Genola v. Scharer, 79 N.J. Super. 308 (App. Div. 1963). In Genola an order fixing arrearages which accrued subsequent to plaintiff wife's remarriage was entered and defendant husband was ordered to pay, and this despite N.J.S.A. 2A:34-25. The basis for the husband's obligation to provide the support which was in arrears was a property settlement agreement entered into *453 before the Alabama judgment of divorce was obtained. The agreement, although incorporated in the judgment, "was not merged with this decree" but was deemed to survive it. Moreover, the wife, in the agreement, relinquished all of her interest in a partnership owned by the husband and wife and agreed to "execute any additional papers that may be needed to effectuate the transfer of her interest therein." The trial court's conclusion that the "plaintiff, in addition to her right of support as a wife, had `an interest in the company' and hence had provided sufficient consideration to support the agreement," was found, on appeal, not to have been an unreasonable one. Said the court, "The agreement in the case sub judice dealt with more than the satisfaction of a marital obligation to support * * *." Although the opinion is obscure as to the basis for its conclusion, and despite the court's reference to the "technical dissimilarity" between "alimony" in the statutory sense and an agreement to support which became part of a subsequent judgment of divorce, it appears that the reason N.J.S.A. 2A:34-25 did not bar the relief given was the independent nature of the agreement, supported by consideration flowing from the wife, which, according to the court, clearly dealt with more than mere support, rather than the technical distinction between statutory alimony and voluntary agreements of support merged in a divorce decree.
In the case before us the provisions of the agreement under review clearly partake of the nature of alimony. Defendant's obligation thereunder is specified in the agreement as being one of support and was to be terminated on plaintiff's remarriage. (In Genola the agreement was silent as to the effect of remarriage on the husband's obligation to make payments.) To the extent that the agreement provided plaintiff wife with other than support, it was discharged in bankruptcy; as to the provisions which did survive, they were primarily designed, and so stated in the agreement, for the support of the wife. Indeed, it is by reason of the essential *454 nature of the support obligation that it was enabled to survive defendant's adjudication of bankruptcy. No independent consideration furnished by the wife served to give this agreement a life apart from the divorce judgment into which it was merged, so as to deprive it of the attributes of an agreement to support which it carried.
The public policy of this State, expressed in N.J.S.A. 2A:34-25, that a divorced husband should not be forced to support a former wife after she has remarried another should not be undermined by a "technical dissimilarity" between an order for alimony in the statutory sense and an agreement to pay support voluntarily undertaken by a husband. Whatever the source of the obligation, the public policy remains the same, and the application of N.J.S.A. 2A:34-25 should not be made to turn on this technical distinction, but rather on the true nature of the liability asserted.
Schiff v. Schiff, 116 N.J. Super. 546, 558 (App. Div. 1971), certif. den. 60 N.J. 139 (1972), does not, as plaintiff contends, dictate a contrary result. Schiff merely sets forth a more stringent standard for the modification of a voluntary agreement of support than that which would obtain with respect to an order for statutory alimony; it does not, however, alter the nature of the obligation itself  that of support. N.J.S.A. 2A:34-25 was not applicable in Schiff and was not considered in that case because there it was the donor husband, not the wife, who had remarried.
Reversed.
NOTES
[1] Hence, the agreement by the husband to meet the tax obligation on the house, provide for its maintenance and insurance, obligations terminable on the wife's remarriage, also constituted part of his agreement to provide support. The monies covered thereby are not, however, part of this case as they were apparently complied with.