### In re Elmer Arthur HAWKINS, Debtor.

### Carolyn Joan HAWKINS, Plaintiff,

### v.

### Elmer Arthur HAWKINS, Defendant.

Bankruptcy No. 3–82–00434.
Adv. No. 3–82–0492.

United States Bankruptcy Court,
E.D. Tennessee.

Nov. 30, 1982.

Ridenour, Ridenour, Ridenour, Ridenour, Bowers, Shumate, McCloud & Lacy, Annette E. Winston, Knoxville, Tenn., for plaintiff.

James C. Humberd, Knoxville, Tenn., for defendant.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

The dischargeability of an indebtedness originating under the terms of a property settlement agreement is at issue in this case. Plaintiff, the former wife of the debtor, contends that the indebtedness is excepted from discharge by the provisions of 11 U.S.C.A. § 523(a)(5) (1979). The debtor disputes this contention and asserts that his indebtedness to the plaintiff is discharged because it is not in the nature of alimony, maintenance, or support.

### I

The parties were husband and wife from January 26, 1977, until the entry of a final decree of divorce on October 30, 1981.[1] The plaintiff has two children from a previous marriage, but there is no issue from the marriage of plaintiff and the debtor.

---

1. The copy of the divorce decree in the record is unsigned. However, no challenge to the authenticity of the decree has been advanced.

Plaintiff and the debtor entered into a property settlement agreement, dated July 16, 1981, prior to the entry of the divorce decree. Under the terms of this agreement the debtor, petitioner in the divorce proceeding, agreed that plaintiff was entitled to any property jointly owned by them with the exception of certain items of personal property immaterial herein. The joint property of the parties included their marital residence. The debtor vacated[2] this property in either April or May of 1981, but plaintiff continued to reside in the house until December of 1981, at which time the dwelling was leased to a third party for $525.00 per month.[3] (Their house had been unsuccessfully offered for sale prior to the filing of the divorce petition in August of 1981. It is not apparent from the record when the property was initially offered for sale.)

It is the testimony of the plaintiff that the debtor agreed to pay the monthly house payment of $528.38 for six months. She also testified that her attorney in the divorce case suggested that she request $350.00 monthly alimony, but she declined to do so because she only wanted assistance to make the house payments until she could "get on her feet." Plaintiff further testified that her gross monthly income at the time of the divorce was only $640.00, whereas the take-home pay of the debtor was approximately $1,000.00 biweekly. (The plaintiff is now self-supporting, but she had to borrow $5,000.00 from family members during the period following her divorce from the debtor.)

The debtor denies that he agreed to make any house payments and contends that he never agreed to support the plaintiff. He further testified that he thought the plaintiff would be able to pay the house payments and the other bills after they were divorced.[4]

The property settlement agreement specifically provided:

That the husband whould (sic) pay unto the wife the sum of $3,170.28, as a further division of the parties' assets, said amount to be payable in six (6) equal monthly installments in the amount of $528.38, to be payable on the 1st day of *July,* 1981, and for five successive months thereafter.

The debtor did deed his interest in the house to plaintiff, but he did not make any of the six monthly installment payments which he agreed to pay under the provisions of the property settlement agreement.

The property settlement agreement further provided that the debtor would pay all debts incurred by the parties during the period of their marriage, including but not limited to ten debts in an aggregate amount of $3,531.09 itemized in the property settlement agreement. The debtor also defaulted upon his agreement to pay some, if not all, of these itemized debts. Plaintiff is jointly liable for some of the debts and has in fact made payments in excess of $800.00 to satisfy three of the obligations.

Plaintiff filed a petition in December of 1981, instituting contempt proceedings due to the debtor's default on his obligations under the terms of the property settlement agreement. A hearing was not held on her petition until March 25, 1982; on this date the debtor filed a pleading in circuit court entitled "Plea Of Bankruptcy." Upon the debtor's refusal to endorse a tax refund check from IRS in favor of the plaintiff, the

---

**2.** The debtor testified that he moved from the marital residence which he and plaintiff jointly owned to his brother's house. He has remarried and entered into a contract to purchase the house in which he presently resides. A downpayment in the amount of $4,500.00 was made contemporaneously with his execution of the contract to purchase.

**3.** The lessee made only two monthly payments to plaintiff prior to disappearing in May of 1982.

**4.** This testimony appears incredible knowing that the monthly house payment was $528.38 and plaintiff's gross income was only $640.00 per month. However, the debtor testified that the plaintiff controlled their funds when they lived together and that he did not even know the amount of plaintiff's income from her job.

circuit court judge ordered that the defendant be incarcerated. Though jailed, the debtor was permitted to telephone plaintiff during the evening of March 25, 1982. During their conversation, the debtor agreed to endorse the federal tax refund check so as to allow plaintiff to negotiate the check. The debtor also promised to pay $100.00 per pay period until his obligation to plaintiff had been satisfied.

On the following day, Friday, March 26, 1982, a meeting was held in the chambers of the judge who had ordered the incarceration of the debtor. The plaintiff and her attorney and the debtor's attorney all attended this meeting. The attorney for the debtor apparently initially learned of the telephonic agreement between his client and the plaintiff at this meeting. The debtor's attorney, apparently displeased with the terms of his client's agreement, insisted that his client had no bargaining power. The judge stated that some agreement must be reached before the debtor would be released from jail. The debtor was released later that same day. On the following Monday, March 29, 1982, the debtor's voluntary bankruptcy petition was filed.

A proposed order documenting the telephonic agreement of the plaintiff and the debtor was submitted by the plaintiff's attorney to the defendant's attorney less than one week after the bankruptcy filing. This proposed order provided in apposite part that plaintiff herein was entitled to the sum of $5,233.00 [5] as the property settlement of the parties' marriage, that the debtor was obligated to plaintiff in that amount, that the parties' 1981 federal income tax refund check would be delivered to the plaintiff in negotiable form and credited against the $5,233.00 obligation, and that the debtor would pay $100.00 per pay period until the balance of the obligation had been paid. This proposed order was eventually signed

by the debtor's attorney with the qualification "approved subject to order of the bankruptcy court." The proposed order has not been entered by the circuit court.

## II

Plaintiff requests the court to find that the sum of $5,233.00 plus one-half of the 1981 federal income tax refund is a nondischargeable debt under 11 U.S.C.A. § 523(a)(5) (1979), which provides in pertinent part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

.     .     .     .     .

(5) to a spouse, former spouse ... for alimony to, maintenance for, or support of such spouse ... in connection with a ... divorce decree, or property settlement agreement, but not to the extent that—

.     .     .     .     .

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support ....

There is no explanation how the figure $5,233.00 was arrived at by the parties either during their negotiations or when the proposed order, which has never been entered, was drafted to document their telephonic agreement. The amount of the tax refund check is not established in the record of the trial. However, the debtor's bankruptcy case file reflects that the amount of the check is $2,166.35.

## III

The issue is simply whether any portion of the indebtedness of the debtor to the plaintiff represents an obligation for alimo-

---

5. The sum of the six monthly installment payments, each in the amount of $528.38, which the debtor agreed to pay "as a further division of the parties' assets," plus the $3,531.09 in debts itemized in the property settlement agreement, which the debtor also agreed to pay, is $6,701.37. During their negotiations on March 25, 1982, the parties apparently agreed to a reduction of the amount of the debtor's liability under the property settlement agreement.

ny, maintenance, or support.[6] This issue is governed by bankruptcy law, as opposed to State law.[7] Disregarding any claim of the plaintiff to the tax refund check for the moment, plaintiff's claim shall be divided into two separate claims. The first is represented by the six monthly installments, in the amount of $528.38 each, that the debtor promised to pay directly to the plaintiff. The second claim is represented by the debts incurred by the parties during their marriage, exclusive of any real property indebtedness.

## A. Directly Payable Monthly Installments

As previously noted, the property settlement agreement recites that the debtor is obligated to pay $3,170.28 to the plaintiff, in six equal installments of $528.38, "as a further division of the parties' assets." The indebtedness represented by these payments is dischargeable if it merely represents a division of the assets of the parties and is not in the nature of alimony, maintenance, or support. 11 U.S.C.A. § 523(a)(5) (1979). It is the duty of the bankruptcy court to look behind the label of an obligation designated as alimony, maintenance, or support to assure that the obligation is not misdesignated. 11 U.S.C.A. § 523(a)(5)(B) (1979). As a corollary to this duty, the court may also look behind the label which suggests that an obligation is merely part and parcel of a division of property. Cf. Brown v. Felsen, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

Numerous factors have been judicially considered to determine whether an obligation in a divorce decree or property settlement represents alimony, maintenance, or support, as opposed to a division of the parties' property.[8] It is the opinion of this court that the critical factors should be the function, purpose, and substance of the obligation; whether the debt is associated with the maintenance or support of the non-debtor spouse, the relative financial need of the parties at the time of the creation of the obligation; and, of course, the intent of the parties.

*Poolman v. Poolman*, 289 F.2d 332 (8th Cir.1961), involved the dischargeability of a judgment which a divorced wife had obtained against her former husband for his default on his obligation to pay a note secured by a deed of trust against their marital residence. Mr. Poolman, pursuant to a separation agreement, had agreed to pay child support, to deed his interest in the home to his wife, and to make the house payments.

---

**6.** The plaintiff's proof of claim reflects a claim in the amount of $6,315.50. This amount is the sum of $5,233.00, purportedly due as the property settlement of the parties agreed to on March 25, 1982, and $1,082.50, which is nearly one-half of the amount of the IRS refund check.

**7.** The congressional intent is explicit: "What constitutes alimony, maintenance, or support, will be determined under the bankruptcy laws, not State law. Thus, cases such as *In re Waller*, 494 F.2d 447 (6th Cir.1974) ... are overruled, and the result in cases such as *Fife v. Fife*, 1 Utah 2d 281, 265 P.2d 642 (1952) is followed." H.R.Rep. No. 595, 95th Cong., 2nd Sess. 364, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6320.

**8.** Judge Jennings has noted that the federal courts have usually considered the following eleven factors when resolving the issue:
1. Whether the obligations of payment terminated upon the death of either spouse or upon the remarriage of the spouse benefited by the payments;
2. Whether the obligation terminates when the dependent children reach majority age or are otherwise emancipated;
3. Whether the payments are to be made directly to the spouse;
4. The relative earnings of the parties;
5. Evidence that the spouse relinquished rights in property in return for the payment of the obligations;
6. The length of the parties' marriage and the number of dependent children;
7. The document itself and any inferences which can be drawn from placement of specific provisions within the document;
8. Whether the debt was incurred for the immediate living expenses of the spouse;
9. Whether the payments were intended for the economic safety of the dependent(s);
10. Whether the obligation is enforceable by contempt;
11. Whether the payments are payable in installments over a substantial period of time.

*In re Nelson*, 16 B.R. 658, 660–61 (Bkrtcy.M.D. Tenn.1981), *rev'd in part*, 20 B.R. 1008 (D.C.M. D.Tenn.1982).

Mrs. Poolman was compelled to borrow money to make the house payments when Mr. Poolman defaulted on his obligation. She obtained a judgment and sought to enforce it through garnishment. Mr. Poolman filed a bankruptcy petition and scheduled the judgment against him as an unsecured provable debt. He obtained a discharge of his provable debts and commenced an ancillary proceeding in bankruptcy requesting release of the garnishment of his wages. Ultimately, the Eighth Circuit Court of Appeals held that the judgment debt of the bankrupt to his former wife was nondischargeable because it was a liability for "maintenance or support" within the meaning of Section 17 of the former Bankruptcy Act. Quoting from the opinion—

> It is safe to say that the obligation to maintain and support a family includes the obligation to keep a roof over their heads. It is obvious that that is what the bankrupt undertook to do when he agreed to keep up the installment payments on the trust deed upon the home in which his divorced wife and his children were to live.

*Poolman v. Poolman,* 289 F.2d 332, 335 (8th Cir.1961).

The Eighth Circuit, as reflected in the quotation, considered the purpose and substance of the bankrupt's obligation in *Poolman* in concluding that the indebtedness in question was nondischargeable. Furthermore, the obligation was directly associated with the support of Mrs. Poolman, since she had been forced to borrow money to make the house payments after the default of the bankrupt. *Cf. In re Miller,* 17 B.R. 773 (Bkrtcy.N.D.Ohio 1982).

*In re Thomas,* 21 B.R. 571 (Bkrtcy.E.D. Pa.1982), involved a property settlement agreement in which the debtor agreed to convey his interest in the marital residence to his wife and to make payments to discharge the second and third mortgages against the property. The debtor listed the mortgage obligations when he filed his bankruptcy petition. Judge King noted that evidence of the "relative financial needs and abilities of the parties" is especially relevant to determine whether the obligation was in the nature of support or merely a property settlement. *Id.* at 573. Judge King concluded that the debtor's obligation to his former spouse constituted support because the debtor was earning in excess of $40,000.00 annually at the time of the divorce, whereas his former wife was unemployed with little prospect for employment, in poor health, and barely able to make the payments on the first mortgage.

Testimony of the parties on the question of their intent with regard to the debtor's obligation to pay the monthly installments is contradictory. As previously noted, plaintiff testified that her attorney suggested that she request alimony[9] but she did not because she only wanted assistance to enable her to make the house payments until she "could get on her feet." Plaintiff testified that the debtor promised to make the house payments for a period of six months, but the debtor, during his testimony, denied making such a promise. He further testified that there was no discussion with the plaintiff about supporting her.

■ The court believes that it is more than mere coincidence that the amount of the monthly installment which the debtor agreed to pay under the terms of the property settlement agreement is precisely equal to the amount of the monthly house payment on the former marital residence of the parties. This fact corroborates the plaintiff's testimony concerning the intention of the parties with regard to the installment payments. The plaintiff's testimony is also supported by other circumstances. There was a substantial disparity between her income and that of the debtor when the property settlement agreement was executed. It would have been impossible for the plaintiff to make the monthly house payment of $528.38 and support her-

9. The debtor, as petitioner, was granted a divorce from plaintiff herein. However, since the grounds for the divorce were irreconcilable dif-

ferences, the plaintiff herein was not barred from receiving an award for alimony. Tenn. Code Ann. § 36–826 (Supp.1982).

self on a monthly gross income of only $640.00 without some support from the debtor or a third party. The conveyance of the marital residence to the plaintiff without concomitantly providing the support to permit plaintiff to maintain the house payments would have been nugatory. These payments were necessary to provide the plaintiff with economic security at the time of the separation and divorce from the debtor, as evidenced by that fact that plaintiff was compelled to borrow $5,000.00 from her family.

It is the conclusion of the court that the obligation to pay the monthly installment payments in the aggregate amount of $3,170.28 is nondischargeable since the obligation represents a debt to a former spouse for maintenance or support in connection with a property settlement agreement. This conclusion is based on the intent of the parties, as determined by the court, the purpose of the obligation, and the relative need of the plaintiff at the time of the property settlement agreement.[10]

### B. Marital Debts Assumed by the Debtor

█ The property settlement agreement includes the following provision with reference to the outstanding marital bills: "That the husband shall pay all debts incurred by the parties during the marriage, specifically including, but not limited to the following . . . ." The plaintiff is not listed among the itemized creditors. However, plaintiff has asserted that she is a creditor of the debtor on the basis of the proposed, unentered order which purports to document her March 25, 1982, telephonic agreement with the debtor. Assuming *arguendo* that plaintiff is a creditor of the debtor—she has paid some of the marital debts and is liable on

others, all of which the debtor agreed to pay—the plaintiff must establish that the debtor's obligation to her is in the nature of alimony, maintenance, or support if the debt represented by the obligation is to be excepted from discharge. 11 · U.S.C.A. § 523(a)(5) (1979).

The legislative history discussing § 523(a)(5) is helpful in this instance:

Paragraph (5) excepts from discharge debts to a spouse, former spouse, or child of the debtor for alimony to, maintenance for, or support of, the spouse or child. This language, in combination with the repeal of section 456(b) of the Social Security Act (43 U.S.C. 656(b)) by section 327 of the bill, will apply to make nondischargeable only alimony, maintenance, or support owed directly to a spouse or dependent. . . . . What constitutes alimony, maintenance, or support, will be determined under the bankruptcy laws, not State law. Thus, cases such as *In re Waller,* 494 F.2d 447 (6th Cir.1974); . . . are overruled, and the result in cases such as *Fife v. Fife,* 1 Utah 2d 281, 265 P.2d 642 (1952) is followed. This provision will, however, make nondischargeable any debts resulting from an agreement by the debtor to hold the debtor's spouse harmless on joint debts, to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse, as determined under bankruptcy law considerations that are similar to considerations of whether a particular agreement to pay money to a spouse is actually alimony or a property settlement.

H.R.Rep. No. 595, 95th Cong. 2nd Sess. 364, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5963, 6320.

---

10. *Stein v. Fellerman,* 144 N.J.Super. 444, 365 A.2d 1382 (1976), *cert. denied,* 73 N.J. 50, 372 A.2d 315 (1977), has been cited by the debtor in support of his contention that the $3,170.28 obligation is dischargeable. The facts in *Stein* are readily distinguishable from those in the instant case. The property settlement agreement in *Stein* included separate provisions obligating the defendant to pay child and spousal support and maintenance. The agreement further provided that the defendant would pay the

house payments until the balance due on the mortgage was reduced to the principal amount of $4,876.56. There is no suggestion in the record in *Stein* that the wife required support until such time as the mortgage principal was reduced to $4,876.56. Instead, this provision indicated that the parties intended for the husband to make payments on the house mortgage as part of their agreement in the division of their property.

This court previously discussed *In re Waller,* 494 F.2d 447 (6th Cir.1974), and *Fife v. Fife,* 1 Utah 2d 281, 265 P.2d 642 (1954), in the case of *In re Allen,* 4 B.R. 617 (Bkrtcy. E.D.Tenn.1980):

The House Report states that cases such as *In re Waller,* 494 F.2d 447 (6th Cir.1974), are overruled, and the result reached in cases such as *Fife v. Fife,* 1 Utah 2d 281, 265 P.2d 642 (1954) is followed. *In re Waller, supra,* involved an agreement incorporated in a divorce decree wherein the husband agreed to pay and indemnify and hold the wife absolutely harmless from all existing obligations. The bankruptcy court held that, since the agreement which was later incorporated into a divorce decree did not specifically designate such award as alimony, it was only a "property settlement" and therefore not within the exceptions to discharge under § 17a of the Bankruptcy Act. The district court affirmed. The Court of Appeals, however, held that it was not necessary that the divorce court specifically state whether an award which it makes to a wife is alimony. The court concluded that Waller's obligation to his former wife to pay and indemnify and hold the wife absolutely harmless from all existing obligations constituted alimony, maintenance, and support, and was a debt not dischargeable in bankruptcy.

In *Fife v. Fife, supra,* an order in a marriage annulment suit directed the defendant to pay certain creditors holding claims against property that was awarded to the plaintiff. The defendant failed to pay those creditors and was cited to show cause why he should not be held in contempt. On the day before the hearing, he filed a petition in bankruptcy and listed in his schedules the debts he had been ordered to pay. Some months later on plaintiff's petition which prayed only for contempt, he was again cited. He was not found in contempt but the court entered judgment against him in favor of the plaintiff for the amount she had been forced to pay creditors in the meantime. The court first pointed out that alimony was not a factor in the case, since generally none was awardable in an annulment case, and then went on to hold that the judgment in favor of the plaintiff for the debts she had been forced to pay was not within the exception to discharge language of § 17a of the Act. The latter holding is apparently the "result" referred to in the House Report.

*Id.* at 619–20.

In contradistinction to the obligation related to the monthly installment payments, there is no evidence that the parties intended that the debtor's assumption of the unpaid marital bills would be an obligation in the nature of alimony, maintenance, or support for the benefit of the plaintiff. More importantly, it is explicitly evident from the legislative history that the congressional intent in enacting § 523(a)(5) of the Bankruptcy Code was that the result in *Fife v. Fife* would be followed. Thus, any obligation of the debtor to the plaintiff in connection with the marital bills assumed by the debtor is dischargeable.[11]

## IV

Finally, there is the matter of a federal tax refund check in the amount of $2,166.35.[12] Plaintiff contends that she is entitled to one-half of the amount of this check. However, there was no proof offered at trial to establish her claim apart

11. The Seventh Circuit Court of Appeals has affirmed a decision that a promise to pay outstanding marital bills was a nondischargeable obligation in a case in which the non-debtor spouse agreed to accept support payments in an amount she believed insufficient in reliance upon the debtor's promise to pay the marital bills. *Matter of Coil,* 680 F.2d 1170 (7th Cir. 1982). There was no similar reliance by the plaintiff in the instant case.

12. The debtor filed an application to amend his schedules to reflect his interest in the check and to claim such sum as an exemption on June 28, 1982. No order has been entered on the application. The Trustee's Report of No Distribution was entered on September 21, 1982.

from the testimony that the debtor, while incarcerated, agreed to endorse the check so that it could be negotiated by the plaintiff and the unentered order which purportedly documents the March 25, 1982, telephonic agreement of the parties. The property settlement agreement is silent on the rights of the parties to this check. The attorney for the debtor proffered the check to the attorney for the plaintiff while in court but the proffer was not accepted at that time. The court reserves any finding or ruling with regard to the refund check because it is not convinced that a dispute exists between the parties as to their respective rights thereto.

This memorandum constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 752.