**In re Ronald S. HILL aka Ron Hill, Debtor.**

**Sylvia B. HILL, Plaintiff,**

**v.**

**Ronald S. HILL, Defendant.**

**Bankruptcy No. 1–82–0082.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Jan. 13, 1983.

---

**3.** These three adversary proceedings have now been consolidated and are still pending in this Court.

Paul E. Perry, Fairfield, Ohio, for defendant.

Robert J. Harris, Cincinnati, Ohio, for plaintiff.

## DECISION

BURTON PERLMAN, Bankruptcy Judge.

Ronald S. Hill, debtor in the related Chapter 7 bankruptcy case, is defendant herein. His former wife, Sylvia Hill, filed a complaint in this adversary proceeding contending that certain obligations required of defendant by the decree by which these parties were divorced are nondischargeable pursuant to 11 U.S.C. § 523(a)(5). The case came on for a bench trial, at the conclusion of which we reserved decision.

The pleadings in the case make it clear that there is no controversy with respect to child support as provided for in the divorce decree. That is, defendant does not dispute that such child support is non-dischargeable. The issue which is presented for decision is whether a certain nine thousand dollar amount provided for in the divorce decree is a non-dischargeable debt because it is in the nature of alimony.

The facts for the most part are not controverted. The parties were married in Pennsylvania on January 8, 1969. Plaintiff is thirty-nine years old and is a native of Switzerland. She has been in the United States since 1965. While married, the parties moved to Ohio from Pennsylvania in 1979. Three children, ages 5, 7 and 11, were born as the issue of the marriage. The two older children suffer from hereditary deafness. The parties were divorced on February 2, 1981 in Clermont County, Ohio, so that the marriage lasted for twelve years. Plaintiff was given custody of the three children. Plaintiff is unemployed but attends the University of Cincinnati as a full-time student on a federal grant. Plaintiff never worked while married.

Under the terms of the divorce decree the defendant was to pay five hundred dollars per month child support while the plaintiff and the children lived in the marital home located in New Richmond, Ohio. Plaintiff was given the right to occupy the New Richmond residence until ten days after completion of the school year in 1981, or thirty days after delivery of the deed in the event of sale of the property. Upon vacation of the property, support payments were to increase to nine hundred dollars per month with a five per cent yearly increase beginning December 1, 1981. Title to the New Richmond home was conveyed to defendant. This property was sold at a foreclosure sale and defendant did not realize any funds upon the sale. This was a disappointment to him for he had maintained the house in immaculate condition after paying $138,000.00 for it. It brought only $67,000.00 upon sale, doubtless because of the unfavorable housing market at the time. At the time of the divorce defendant never imagined that this would be the ultimate outcome with the New Richmond home.

The decree further provided, among other things, that the plaintiff was to receive the proceeds from the sale of the parties' property in Pennsylvania. The evidence was that this amounted to some $19,000.00. Plaintiff testified that she paid these proceeds over to her parents. She said that this was because her parents had lent the parties substantial amounts while they were married in connection with the Pennsylvania home. Defendant contested that the funds advanced by plaintiff's parents were pursuant to a loan, asserting instead that they were a gift. It is undisputed, however, that the proceeds received by plaintiff were paid over to her parents.

Under the terms of the decree, the defendant was to pay bills totalling approximately nine thousand dollars, using the proceeds from the sale of a tractor to, at least

in part, facilitate this end. Defendant was to provide major medical insurance for the children and to designate the children as the beneficiaries of three life insurance policies. Each party was to retain the personal property in his possession. Plaintiff was to assume any obligation owing to her parents and defendant was given the right to claim the children as income tax dependents.

The decree also provided that:

"It is further ordered that the stocks and securities under the savings plan as determined by the General Electric Benefit Statement for December 31, 1980, will be divided equally between the parties, and Plaintiff [defendant herein] will pay to defendant herein [plaintiff] the balance of her share as herein determined, in annual installments of ONE THOUSAND DOLLARS ($1,000.00), without interest, same to be payable in equal quarterly installments of TWO HUNDRED FIFTY ($250.00) DOLLARS beginning April 1, 1981."

Defendant's monetary interest in this savings plan amounted to approximately $18,000.00. Plaintiff's interest was some $9,000.00 and it is this sum which is presently in controversy.

■ The starting point of our inquiry must be the relevant statute, 11 U.S.C. § 523(a)(5), which provides:

"(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise, or

(B) such a debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;"

\* \* \* \* \* \*

It is the duty of the Court to ascertain the intention of the parties as deduced from the agreement together with those surrounding circumstances which we are permitted to consider in determining whether a spousal debt is in the nature of alimony. *In the Matter of Gentile,* 16 B.R. 381, 383 (Bkrtcy. S.D.Ohio, 1982). After carefully considering the record before us, we have concluded that the obligation in question is in the nature of alimony, and it therefore non-dischargeable in bankruptcy.

■ The divorce decree itself does not state whether or not the obligation in question is alimony. This omission is, however, not of great significance, since the Court must determine the essence of the liability and look behind any label affixed by the parties in determining the true nature of the liability. *In Re Diers,* 7 B.R. 18, 20 (Bkrtcy.S.D.Ohio, 1980).

■ We have defined alimony as "an allowance for support and maintenance", and as "a substitute for marital support." *In Re Diers,* supra. Defendant contends that the amount fixed as child support in the divorce decree ought to be regarded as not just child support, but support for their mother as well. We are unwilling to take that view. We are precluded by the divorce decree which fixes an amount for child support. We will not make an independent determination of the justifiability of that award. Apart from the monthly child support payments, the divorce decree provided that plaintiff was to get the proceeds of the Pennsylvania house. This she received and paid to her parents. The only other payment she was to receive pursuant to the decree was from the division of interest in defendant's General Electric savings plan here in question. That amount was surely intended as alimony within the foregoing definition. The parties had been married for twelve years. There were three children born of the marriage. Plaintiff was not employed at the time of the divorce, nor

had she ever been employed during the time of the marriage. This record does not disclose that she had any independent income at the time of the divorce. Under these circumstances we conclude that the approximately nine thousand dollars was intended to provide her a substitute for marital support. In *In re Calvin M. Smith,* Bankruptcy No. 1–80–02717, Adv. Nos. 1–81–0082 and 1–81–0083 decided August 24, 1981, (unreported) we said:

"Factors other than the nature of the underlying debt lend further support to our conclusion that the substance of the arrangement was intended to be in the nature of alimony, maintenance, or support. First, the absence in the Separation Agreement of any specific provision for alimony payments to Plaintiff evidences a likelihood that the assumption of the Midland Guardian debt was meant to provide Plaintiff and the child with some degree of financial security akin to alimony, maintenance or support. *See In re Sturgell,* 7 B.R. 59, 62 (Bkrtcy.S.D.Ohio, 1980). Second, the fact that the parties were married for approximately seven years, so that the marriage had endured for a significant length of time, increases the probability that the parties intended the arrangement in nature to take the place of marital duty of support. *See e.g., Id.* at p. 62. Finally we note the wide disparity in the relative incomes of the parties when the Agreement was executed as well as during the previous years of the marriage. *See* fn. 1, *supra.* Other than in the year 1976, Defendant's earnings far exceeded those of Plaintiff. This consistent pattern militates in favor of the conclusion that the arrangement was meant to be a substitute for marital support. *See In re Diers,* 7 B.R. at 21."

This language is similarly applicable in the case presently before us.

■ While the parties have cast the argument before us, and it is common in these controversies to do so, as whether certain property (the interest in the General Electric benefit plan) was awarded as alimony or as property settlement, such a characterization is not particularly constructive. The reason for this approach probably lies in O.R.C. § 3105.63 where, in regard to separation agreements, the statute says that:

"The separation agreement shall provide for a division of all property, alimony, and, [custody matters]."

The statute thus appears to distinguish division of property from alimony. The two terms are not, however, mutually exclusive. Under the law of Ohio the parties may, upon a divorce, agree to how they will divide up their property, and such an award of property to a spouse may be regarded as alimony. In *Cherry v. Cherry,* 66 O.St.2d 348, 20 O.O.3d 318, 421 N.E.2d 1293 (1976), the Supreme Court of Ohio in commenting upon its earlier *Wolfe* decision said the following at 66 O.St.2d 352, 20 O.O.3d 318, 421 N.E.2d 1293:

"The issue before this court in *Wolfe v. Wolfe,* 46 Ohio St.2d 399, 75 O.O.2d 474 [350 N.E.2d 413] (1976), was whether a court of common pleas had power to modify the terms of a decree of divorce previously issued by it, which related to an allowance of "alimony." Before addressing the issue, this court reexamined the basis and method upon which alimony is awarded in Ohio. In its reexamination the court pointed out that *"alimony" is composed of two separate elements—alimony which constitutes a division of the marital assets and liabilities, and alimony consisting of periodic payments for sustenance and support."*

In the light of all the foregoing we hold in favor of plaintiff and conclude that the nine thousand dollar payment based upon the General Electric savings plan is in the nature of alimony and therefore non-dischargeable.

■ There is a contention on the part of defendant that the complaint herein was not timely filed. This position is not well taken because the present complaint is not subject to Section 523(c), and there are therefore no time limits within such a complaint may be filed.

The foregoing constitutes our findings of fact and conclusions of law.