In re Dennis L. MILLER, Debtor.

Debra A. MILLER, Plaintiff,

v.

Dennis L. MILLER, Defendant.

Bankruptcy No. 82–01042 T.
Adv. No. 82–1962.

United States Bankruptcy Court,
E.D. Pennsylvania.

Nov. 3, 1983.

J. Richard Oare, Jr., York, Pa., for plaintiff.

Daniel M. Pell, York, Pa., for defendant.

### OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

In this adversary proceeding, the plaintiff, Debra A. Miller, is the former wife of the debtor/defendant, Dennis L. Miller. She has filed a Complaint against the debtor, in which she alleges that a debt owed to her by the debtor is nondischargeable, pursuant to Section 523(a)(5) of the Bankruptcy Code, 11 U.S.C. § 523(a)(5), because the debt constitutes support and maintenance for herself and the parties' minor child. For the reasons hereinafter given, we agree with the plaintiff and find the debt in ques-

tion to be nondischargeable under § 523(a)(5).[1]

### I. FACTS

The plaintiff and the debtor were married on April 20, 1968. On December 16, 1969, the parties' only child, a son, was born. The parties entered into a separation agreement, dated September 22, 1979, which became incorporated into the Divorce Decree upon the divorce of the parties on December 19, 1979.

The stated purposes of the separation agreement were to provide for the final settlement of the parties' property rights and affairs and to provide for the support, custody and visitation of their minor child. The agreement placed custody of the child with the plaintiff, subject to the reasonable visitation rights of the debtor. In another provision of the separation agreement, the debtor agreed to transfer all of his interest in the parties' jointly owned mobile home to the plaintiff. The mobile home was the residence of the parties and their child prior to the separation and continues to be the residence of the plaintiff and minor child. The agreement further provided that the debtor would pay $50.00 per week for the support and maintenance of the plaintiff and their minor child. However, in a handwritten addendum to the agreement, the parties agreed that the debtor would pay $45.00 per week child support only.

The most important provision of the separation agreement pertaining to the present controversy is the provision by which the debtor agreed to assume sole responsibility for eight specified joint debts of the parties. One of the eight was a debt to Household Finance Corporation (hereinafter "H.F.C."), which was secured by a second chattel mortgage upon the aforementioned mobile home and which was payable at $90.00 per month.[2] None of the other seven debts is relevant to the present case.

1. This Opinion constitutes the findings of fact and conclusions of law as required by Bankruptcy Rule 7052.

2. Although not mentioned in the separation agreement, it is undisputed that the plaintiff

agreed to make payments on the first chattel mortgage on the mobile home upon the parties' separation. She has made and continues to make these payments.

Subsequently, the plaintiff, pursuant to the separation agreement, secured a state court judgment against the debtor in the amount of $1675.48 for the balance due on the H.F.C. loan. The plaintiff did so in response to H.F.C.'s state court suit against her, which resulted in a judgment for the identical amount in favor of H.F.C.[3] The debtor then filed an amendment in our Court, whereby he included as one of his debts the aforementioned judgment by the plaintiff against him. It is this debt which the plaintiff claims is nondischargeable pursuant to § 523(a)(5).

At the hearing on this case, the testimony of the parties was in conflict as to whether or not the parties had intended that the debtor's assumption of the H.F.C. debt in the separation agreement was for the purpose of fulfilling an obligation in the nature of support and maintenance of the plaintiff or their child. The debtor testified that he had agreed to assume the H.F.C. debt and the seven other joint debts "so that the marriage could be terminated with a minimum amount of hassle." (Notes of Testimony, p. 13). He further testified that his agreement to assume these joint debts was unrelated to the support and maintenance of his wife and child. Rather, he testified, his only intended obligation of support in the separation agreement was his agreement to pay $45.00 per week for the support of his son only.

The plaintiff testified, however, with respect to the debtor's assumption of the H.F.C. debt in the separation agreement, as follows: "He said he would accept responsibility of it so that I could keep my house and keep a roof over his son's head, because I didn't make that much money." (Notes of Testimony, p. 6). It is clear from other portions of the plaintiff's testimony, as well, that she believed that the debtor's agreement to assume the H.F.C. debt was for the purpose of providing support and maintenance for herself and their child.

Testimony at the hearing established that the debtor was earning gross wages of $373.60 per week when the separation agreement was made. At that time, the plaintiff was earning gross wages of approximately $110.00 per week.

## II. DISCUSSION

Section 523(a)(5) of the Bankruptcy Code, 11 U.S.C. § 523(a)(5), provides in relevant part:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—...

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of both spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—...

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support...

■ The legislative history of § 523(a)(5) explicitly states that the determination as to what debts constitute alimony, maintenance, or support is to be made according to the federal bankruptcy law, not state law. House Report 95–595, 95th Cong., 1st Sess. (1977) 363, *reprinted in* 1978 U.S.Code Cong. and Admin.News 5787, 5963, 6320; Senate Report No. 95–989, 95th Cong., 2nd Sess. (1978) 79, *reprinted in* 1978 U.S.Code Cong. and Admin.News 5787, 5865. Also see *In re Williams,* 703 F.2d 1055, 1056–57 (8th Cir. 1983).

■ An extensive body of case law has been developed by the bankruptcy courts and other federal courts in considering the question of what debts are actually in the nature of alimony, maintenance, or support, and thus nondischargeable, under § 523(a)(5). The courts have made their

---

**3.** H.F.C. could not sue the debtor at that time because he had already filed his Chapter 7 bankruptcy petition, listing H.F.C. as a creditor, and was thus protected by the automatic stay of 11 U.S.C. § 362(a).

determinations based upon a variety of factors. From our review of these cases, as well as our own consideration of the question, we believe that the three major factors to be considered in § 523(a)(5) cases are: (1) the intention of the parties in creating the obligation; (2) the financial circumstances and needs of the parties, particularly of the party opposing dischargeability of the obligation, at the time the obligation was created; and (3) the function that the obligation serves. None of these factors is alone determinative. All three should be considered together. Also, other factors, such as the length of the marriage and the presence of minor children, should be considered under appropriate circumstances.

■ It is well-established in § 523(a)(5) cases that, in determining the intention of the parties, extrinsic evidence of the parties' intention regarding a particular obligation should be considered along with the document itself creating the obligation in question. See, for example, *In re Warner,* 5 B.R. 434, 441 (Bkrtcy.D.Utah 1980); *In re Anderson,* 21 B.R. 335, 338 (Bkrtcy.S.D.Cal. 1982). In the present case, we find that, as is often true, the separation agreement itself is inconclusive as to the intention of the parties regarding the H.F.C. debt for § 523(a)(5) purposes. In this regard, it may be noted that the legislative history of § 523(a)(5) states that debts which are the subject of "hold harmless" agreements between spouses (as with the H.F.C. debt in our case) may be either dischargeable or nondischargeable pursuant to § 523(a)(5). The "hold harmless" element itself is a neutral factor in determining § 523(a)(5) cases. House Report 95–595, 95th Cong., 1st Sess. (1977) 363, *reprinted in* 1978 U.S.Code Cong. and Admin.News 5963, 6320; Senate Report No. 95–989, 95th Cong., 2nd Sess. (1978) 79, *reprinted in* 1978 U.S.Code Cong. and Admin.News 5787, 5865. Also see *In re Massimini,* 8 B.R. 428, 430 (Bkrtcy.W.D.Pa. 1981).

We also find that the extrinsic evidence of the parties' intention regarding the purpose of the debtor's agreement to assume the H.F.C. debt, as manifested by their conflicting testimony at the hearing, as discussed *supra,* is inconclusive and provides us with no help in resolving the issue before us.

■ We now turn to the second major factor in our determination—the financial circumstances and needs of the parties, particularly of the plaintiff, at the time the obligation was created.[4] This factor has been recognized as tremendously important by many of the courts in § 523(a)(5) cases. See, for example, *In re Hawkins,* 25 B.R. 430, 435–36 (Bkrtcy.E.D.Tenn.1982); *In re Thomas,* 21 B.R. 571, 573–74 (Bkrtcy.E.D. Pa.1982); *In re Anderson, supra.* These cases and others, taken as a whole, essentially stand for the proposition, with which we agree, that if the payment of the debt in question was necessary for the reasonable support and maintenance of the debtor's spouse or former spouse and/or child or children at the time that the debtor assumed sole responsibility for the debt, and if the debtor's spouse or former spouse had been unable to pay the debt at that time according to its terms, the debt should normally be found to be nondischargeable pursuant to § 523(a)(5).

■ In applying this proposition to the present case, we find from the record as a whole that the plaintiff simply could not have afforded to pay the H.F.C. debt of $90.00 per month at the time the separation agreement was entered into. In that the debt was secured by a second chattel mortgage upon the mobile home residence of the plaintiff and the parties' minor child, there can be little question that the payment of the debt was necessary for their reasonable support and maintenance. And, although the disparity in the incomes of the parties is not determinative, we note that, as men-

---

**4.** While there is some caselaw to the contrary, we agree with the reasoning of those cases which have held that Congress did not intend for the courts to consider the current financial circumstances and needs of the parties in deciding § 523(a)(5) cases. See, for example, *In re Nelson,* D.C., 20 B.R. 1008 (D.C.M.D.Tenn. 1982); *In re Anderson, supra.*

tioned *supra,* the plaintiff earned gross wages of only approximately $110.00 per week at the time of the separation agreement as compared with the debtor's earnings of $373.60 per week in gross wages at that time.

The third and final major factor for our consideration is the function that the obligation serves. When the obligation in question is secured by a mortgage, including a secondary mortgage, upon the residence of the debtor's former spouse and child or children, many courts have found, correctly we believe, that this factor weighs very heavily in favor of a determination of nondischargeability of the obligation (or of a judgment based upon the obligation). See, for example, *Poolman v. Poolman,* 289 F.2d 332 (8th Cir.1961); *In re Thomas, supra; In re Henry,* 5 B.R. 342 (Bkrtcy.M.D.Fla.1980); *In re Miller,* 17 B.R. 773 (Bkrtcy.N.D.Ohio 1982).

Many of the courts which have considered this factor under § 523(a)(5) of the Bankruptcy Code have been guided by the case of *Poolman v. Poolman, supra. Poolman* was decided under Section 17(a)(7) of the former Bankruptcy Act, which was virtually identical to the present § 523(a)(5). *Poolman* involved the dischargeability of a judgment which a divorced wife had obtained against her former husband for his default on his obligation to pay a note secured by a deed of trust against their marital residence. Mr. Poolman, pursuant to a separation agreement, had agreed to pay child support, to deed his interest in the home to his wife, and to make the house payments. Mrs. Poolman was compelled to borrow money to make the house payments when Mr. Poolman defaulted on his obligation. She obtained a judgment thereon against him and sought to enforce it through garnishment. Mr. Poolman filed a bankruptcy petition and scheduled the judgment against him as an unsecured provable debt. He obtained a discharge of his provable debts and commenced an ancillary proceeding in bankruptcy requesting release of the garnishment of his wages. Ultimately, the Eighth Circuit Court of Appeals held that the judgment debt of the bankrupt to his former wife was nondischargeable because it was a liability for "maintenance or support" within the meaning of the aforementioned § 17(a)(7) of the former Bankruptcy Act. The Court stated at 289 F.2d at 335:

> It is safe to say that the obligation to maintain and support a family includes the obligation to keep a roof over their heads. It is obvious that that is what the bankrupt undertook to do when he agreed to keep up the installment payments on the trust deed upon the home in which his divorced wife and children were to live. That the obligation has become unduly burdensome cannot be considered in determining the legal effect of his discharge.

We certainly agree that the payment of obligations secured by mortgages involves the very essence of family support and maintenance.

In the present case, of course, the H.F.C. debt is secured by a second chattel mortgage upon the mobile home in which the debtor's former spouse and child continue to reside. Therefore, in accordance with the foregoing analysis, this fact weighs very heavily in favor of a finding of nondischargeability of the plaintiff's judgment against the debtor stemming from the debtor's agreement to assume sole responsibility for the H.F.C. debt.

We also note that the parties were married for almost twelve years, a not insubstantial period of time, and that the plaintiff has custody of the parties' thirteen year old son.

In conclusion, we find that two of the three major factors which we have considered point strongly toward a determination of nondischargeability of the plaintiff's judgment against the debtor. The other major factor, the intention of the parties regarding the debtor's assumption of sole responsibility for the H.F.C. debt, is inconclusive. Therefore, we conclude that the plaintiff's judgment of $1675.48 against the debtor, based upon the debtor's "hold harmless" agreement regarding the H.F.C. debt, represents support and maintenance for the

plaintiff and the parties' minor child and is thus nondischargeable pursuant to § 523(a)(5).