In re Henry D. CHEDRICK, Debtor.

Malinda CHEDRICK,
Plaintiff/Appellant,

v.

Henry D. CHEDRICK,
Defendant/Appellee.

Civ. A. No. 87–2099.
Bankruptcy No. 85–619.

United States District Court,
W.D. Pennsylvania.

April 11, 1989.

J. David Caruthers, Greensburg, Pa., for plaintiff/appellant.

Henry A. Hudson, Greensburg, Pa., for defendant/appellee.

## MEMORANDUM OPINION

BLOCH, District Judge.

Appellee/debtor Henry D. Chedrick filed a voluntary petition in bankruptcy in March, 1985. At that time, he included in his debt schedules a contractual debt to his former wife, appellant Malinda Chedrick. This contractual debt arose out of a "Post-nuptial Agreement" (the Agreement) into which the Chedricks entered at the time of their divorce in 1983.

Malinda Chedrick filed a proof of claim and a complaint against the discharge of appellee's obligations in Bankruptcy Court. A hearing was held on March 4, 1986. On June 4, 1987, the Bankruptcy Court ordered that a portion of the claimed debt was nondischargeable but that a portion would be discharged in bankruptcy. Appellant filed a timely appeal.

The issue below which is before this Court on appeal is whether debtor's obligation pursuant to the Agreement is a property settlement and, thus, dischargeable or a debt for alimony, maintenance or support and, thus, nondischargeable under 11 U.S.C. § 523(a)(5).

In making its decision, the Bankruptcy Court purported to apply *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), in examining the Agreement "to determine what the parties intended and what 'bankruptcy labels' the Courts of Pennsylvania would have found if this problem were presented to them." (Cosetti, J., memorandum opinion at 2, March 17, 1986, reinstated and amended in memorandum opinion, April 15, 1987). In addition, the Court utilized its "advantage of hindsight" and considered the parties' relative incomes both at the time of entering the Agreement and in the years since then. The Court stated:

> In the year 1983 when the Agreement was drawn, Mr. Chedrick's income was much greater than Mrs. Chedrick. However, by the end of 1984, she had earned an income that was the equal of his income. The two children are over 18 years of age. We hold that the payment of the $220 per week called for in the Agreement was an appropriate payment for maintenance, alimony and support under all of these conditions until the end of 1984. At the end of 1984, these payments would no longer constitute maintenance, alimony or support. The remainder of the Agreement which calls for the turnover of the residential property was a property settlement. The matters related to the turnover are thus dischargeable.

(Memorandum opinion of March 17, 1986, at 2–3).

The Court ordered:

> that such portion of the post-nuptial agreement which provided for payment of $220 per week from August 7, 1983 through the week ending December 31, 1984, by the debtor, Henry D. Chedrick, to Malinda Chedrick, his former wife, is regarded as maintenance, alimony

and/or support. The payments due after December 31, 1984, are regarded as a property settlement and are discharged. (Order of June 4, 1987).

This Court must review the Bankruptcy Court's decision to determine whether it was clearly erroneous. *Tilley v. Jessee,* 789 F.2d 1074, 1077 (4th Cir.1986); *Boyle v. Donovan,* 724 F.2d 681, 683 (8th Cir.1984). This Court will reverse the Bankruptcy Court's determination that some of debtor's weekly payment obligations under the Agreement are dischargeable because the Bankruptcy Court applied incorrect legal principles in reaching its decision. *See Tilley,* 789 F.2d at 1078 ("when an appellate court is left ... with 'the definite and firm conviction that a mistake has been committed,' ... the lower court's conclusion cannot stand"). The parties do not dispute that portion of the Bankruptcy Court's ruling concerning the turnover of residential property.

Section 523(a)(5) provides in pertinent part that a debtor in bankruptcy is not discharged of a debt "to a ... former spouse ... of the debtor, for alimony to, maintenance for, or support of such spouse ... in connection with a separation agreement, divorce decree or other order of a court of record...." 11 U.S.C. § 523(a)(5). Under this section, whether a debt constitutes alimony, maintenance or support is a matter of federal, not state, law. H.R.Rep. No. 595, 95th Cong., 1st Sess., 363 (1977) *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6320; S.Rep. No. 989, 95th Cong., 2nd Sess., 99 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5865. *See* 3 *Collier on Bankruptcy* § 523.15 at 523–105 (15th ed.).

Thus, to the extent the Bankruptcy Court interpreted *Felsen* to require it to determine whether the payments due under the Agreement constituted maintenance, alimony or support under state law, the Bankruptcy Court incorrectly applied the ruling in *Felsen.*[1] The Court in *Felsen* ruled that a bankruptcy court is not bound

to accept a state court's rulings on whether a debt is dischargeable in bankruptcy. 442 U.S. at 138–39, 99 S.Ct. at 2212–13. *See In re Williams,* 3 B.R. 401, 403 (Bankr.N.D. Ga.1980). It did not rule that a bankruptcy court must follow state law when determining whether a debt is dischargeable.

Even if the Court had so ruled in *Felsen,* it must be noted that *Felsen* involved an assertion that a debt was nondischargeable as a product of fraud, deceit and malicious conversion. *See id.* at 129, 99 S.Ct. at 2208. It did not address the issue of nondischargeability of debts for alimony, maintenance or support. This is significant because, as noted above, the legislative history of § 523(a)(5) clearly indicates that, whatever procedures are utilized concerning other sections, determinations of dischargeability under § 523(a)(5) are to be made according to federal bankruptcy law.

Further, even if the Bankruptcy Court did not rely on state law definitions of maintenance, alimony or support in making its decision, the Court erroneously admitted and relied upon evidence of the parties' relative economic situations since entering the Agreement in making its decision.

The Court must interpret the Agreement to ascertain the parties' intention at the time of entering the Agreement. *Yeates,* 807 F.2d at 878. This is done by examining the Agreement and the surrounding circumstances. *In re Hill,* 26 B.R. 156, 158 (Bankr.S.D.Ohio 1983). Labels assigned to the payments in the Agreement are not determinative. 11 U.S.C. § 523(a)(5)(B); *In re Tillett,* 22 B.R. 907, 910 (Bankr.W.D. Okla.1982). In determining whether the parties intended payments to represent maintenance, alimony or support, courts have considered, *inter alia,* the financial circumstances and economic positions of the parties. *See In re Goin,* 808 F.2d 1391, 1392 (10th Cir.1987); *In re Bell,* 61 B.R. 171, 175 (Bankr.S.D.Tex.1986); *In re Miller,* 34 B.R. 289, 292 (Bankr.E.D.Pa.1983); *In re Edwards,* 33 B.R. 942, 946 (Bankr.N. D.Ga.1983); *In re Hawkins,* 25 B.R. 430,

---

**1.** This is not to say that, in making such a determination, the Bankruptcy Court should totally ignore well-developed principles of state

law in this area. *See In re Yeates,* 807 F.2d 874, 878 (10th Cir.1986).

434 n. 8 (Bankr.E.D.Tenn.1982). Thus, considering evidence of the parties' incomes is clearly proper.

The Bankruptcy Court in this case went a step further, however, in comparing the parties' relative economic conditions not only in 1983, when they entered into the Agreement, but also in 1984 and 1985. In this, the Court erred.

■ Although a split of authority exists on this question (*see Bell,* 61 B.R. at 176 (citing cases)), this Court rules that the clearly superior position is that taken by the majority of courts deciding this issue— "a bankruptcy court may not consider circumstances subsequent to the agreement providing support to the debtor's [spouse], nor any circumstances existing at the time the debtor's petition was filed." *Id.* That is, bankruptcy courts should not inquire into the current relative financial conditions of the parties but should only determine the nature of the obligation at the time of the divorce. *Id. See also Forsdick v. Turgeon,* 812 F.2d 801, 804 (2d Cir.1987); *Miller,* 34 B.R. at 292 n. 4; *In re Earl,* 55 B.R. 12, 15 (Bankr.W.D.Mo.1985); *In re Daiker,* 5 B.R. 348, 352 (Bankr.D.Minn. 1980).[2]

To allow a bankruptcy court to take into consideration the parties' changed financial circumstances in determining whether an obligation constitutes alimony, maintenance or support would be to rule that such agreements are dischargeable in nearly every case. In most cases, by the time a debtor has filed for bankruptcy, the economic condition of his or her ex-spouse will be at least on par with, if not more favorable than, that of the debtor, who, after all, has been driven to bankruptcy by his debts. The debtor's proper remedy in this case is not to avoid this debt through bankruptcy, but to petition to the court with jurisdiction over his or her divorce decree for a modification of any such agreement in light of

changed circumstances. *See, e.g., Daiker,* 5 B.R. at 352.

■ In this case, the Agreement did not label the payments as either alimony, maintenance, support or a property settlement. After an evidentiary hearing, the Bankruptcy Court found that, at the time the parties entered into the Agreement, they intended the Agreement to represent payments for maintenance, alimony and/or support. It considered payments due after 1984, when the parties' income reached near-parity, however, as a property settlement and, thus, dischargeable. The only relevant inquiry was the parties' intention at the time they entered into the Agreement. The Bankruptcy Court did not clearly err in ruling that, at that time, the parties intended the Agreement to represent alimony, maintenance or support. Any further inquiry being irrelevant, the Bankruptcy Court's further dissection of the Agreement was clearly erroneous.

The Bankruptcy Court's decision is reversed insofar as the Court ruled that weekly payments due after December 31, 1984, are dischargeable in bankruptcy as a property settlement.

An appropriate Order will be issued.

---

**2.** It may be that the Bankruptcy Court did not consider the evidence of the parties' current financial condition as bearing on the issue of intent, but rather that it was attempting to balance the competing interests at stake: the interest in a debtor not avoiding a debt of support to his or her family and the interest in giving a debtor a "fresh start" in bankruptcy. (*See* tr. at

95–96). To the extent the Court did so, such use of the testimony is also clearly erroneous. While such a balancing may be necessary under other sections mandating nondischargeability, Congress did not intend such a balancing to occur in cases of § 523(a)(5) nondischargeability. *See In re Nelson,* 20 B.R. 1008, 1011 (Bankr. M.D.Tenn.1982).