In re Daniel W. YAUGER, Debtor.

Margaret L. YAUGER, Plaintiff,

v.

Daniel W. YAUGER, Defendant.

Bankruptcy No. 90–2731–BM.
Adv. No. 91–0019–BM.

United States Bankruptcy Court,
W.D. Pennsylvania.

Aug. 16, 1991.

Michael McGreal, Sable, Makoroff, Sherman & Gusky, P.C., Pittsburgh, Pa., for defendant/debtor.

Herbert G. Mitchell, Jr., Hiller, Pa., for plaintiff.

MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is a *Complaint Objecting To Discharge Of Debt* by Margaret L.

Yauger ("plaintiff"), former wife of defendant Daniel W. Yauger ("debtor"), wherein she seeks to have a debt arising under a property settlement agreement declared nondischargeable. Plaintiff maintains that debtor's obligation to pay the mortgage on their former marital residence is in the nature of support and maintenance and, therefore, is nondischargeable pursuant to 11 U.S.C. § 523(a)(5). Debtor denies that this obligation is in the nature of support and maintenance. To the contrary, he claims that it is in the nature of a property settlement and thus is dischargeable.

The Court finds, for the reasons set forth below, that the obligation is in the nature of support and maintenance and, accordingly, is nondischargeable pursuant to 11 U.S.C. § 523(a)(5).

–I–

FACTS

Plaintiff and debtor were married on February 21, 1965. One (1) child was born of the marriage. During their marriage they purchased a tract of land in 1974 located in Fayette County, Pennsylvania. In 1985, plaintiff and debtor borrowed in excess of $15,000.00 from Signal Consumer Discount Company ("Signal") to build a house and granted Signal a mortgage on the property.

Plaintiff and debtor were divorced in 1989. On March 13, 1989, plaintiff and debtor executed a Property Settlement Agreement ("Agreement"), which set forth their respective financial and personal rights and obligations as between each other. Under the Agreement, plaintiff was given sole possession and title to the marital residence while debtor agreed to make all payments on the mortgage held by Signal until said mortgage was paid in full.

On September 6, 1990, debtor filed a voluntary Chapter 7 petition in this court. The Signal mortgage was listed on Schedule A-2, plaintiff was listed as a creditor on Schedule A-3 of debtor's bankruptcy petition. Debtor seeks to have the debt owed to plaintiff discharged in bankruptcy.

Debtor ceased making payments on the Signal mortgage after approximately one (1) year, whereupon plaintiff assumed the payments. She was financially unable to pay the monthly installments of $352.00, however, and paid only the interest on the debt. On October 25, 1990, plaintiff refinanced the mortgage with Smithfield State Bank ("Smithfield") to reduce the monthly payments from $352.00 to $171.00.

In January of 1991, plaintiff filed a complaint against debtor seeking to have the debt owed to her under the Agreement declared nondischargeable. She argues that the debt is in the nature of support and maintenance pursuant to § 523(a)(5).

–II–

ANALYSIS

Section 523(a)(5) of the Bankruptcy Code excepts certain debts from discharge. Specifically, it provides that:

(a) A discharge under § 727 ... of this title does not discharge an individual debtor from any debt ...

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, and support of such spouse or child, in connection with a separation agreement, divorce decree, or other order of court of record ...

The threshold inquiry under § 523(a)(5) is whether the debt in question is in the nature of alimony, support, or maintenance. This determination is a matter of federal, not state, law. *In re Kornguth*, 111 B.R. 525, 527 (Bankr.W.D.Pa. 1990). The court should look beyond the form of the agreement to its actual substance. *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir.1984). Extrinsic evidence may be considered in examining the nature of the obligation. *Matter of Benich*, 811 F.2d 943 (5th Cir.1987).

The key to classifying an obligation as alimony or support rather than as a property settlement is the intent of the parties *at the time the obligation was incurred*. *In re Gianakas*, 917 F.2d 759 (3rd Cir.1990).

Three (3) factors are particularly relevant in determining the intent of the parties in this regard:

(1) the language and substance of the agreement in the context of surrounding circumstances;

(2) the parties' financial circumstances at the time of the settlement; and

(3) the function served by the obligation at the time of the divorce or settlement.

*Gianakas,* 917 F.2d at 759.

■ Taken separately, a given factor may be inconclusive in a particular case. However, these indicators when considered together usually shed light on the parties' intent concerning the divorce agreement. When the language and substance of the agreement fail to reveal the parties' intent, the financial circumstances of the parties at the time of the agreement may be probative. *Gianakas,* 917 F.2d at 763. For example, one spouse may have had custody of minor children or may have been employed in a lower paying job than the other spouse at that time. *Gianakas,* 917 F.2d at 763. The function served by the obligation may also be relevant. The assumption of a mortgage on the marital residence which enables the debtor's family to remain in the residence is usually considered to indicate that the obligation is in the nature of support and maintenance. *Gianakas,* 917 F.2d at 763; *In re Miller,* 34 B.R. 289 (E.D.Pa. 1983).

■ The language and substance of the Agreement itself provide little evidence of the intention of the parties in executing said Agreement. It provides, inter alia, that debtor would transfer all of his right, title, and interest in the marital domicile and that debtor would make all payments on the mortgage held by Signal until said mortgage was satisfied. The agreement further provided that plaintiff would retain all furnishings in the marital domicile, except for a gun cabinet, and that each party would retain the motor vehicles in their possession.

The parties' financial circumstances at the time of the Agreement and the function served by the above provisions of the Agreement conclusively indicate that debtor's assumption of the Signal mortgage was intended to provide support and maintenance for plaintiff and their child.

Plaintiff could not have paid the mortgage and supported their minor child by herself at the time the Agreement was executed. One year later, when debtor reneged on his Agreement to pay the mortgage, plaintiff could afford to pay only the interest due on the loan. Eventually she had to refinance the mortgage with Smithfield in order to reduce the amount of the monthly payments. Debtor, by contrast, was steadily employed and was financially able to make the mortgage payments at the time the Agreement was executed.

Moreover, it is obvious that the function served by debtor's agreement to pay the mortgage while transferring his rights to the marital domicile was to "keep a roof over the heads" of plaintiff and their minor child. Without such an agreement, plaintiff and their child would not have had a place in which to live. As has been indicated, plaintiff lacked the financial means at the time of the Agreement to do so on her own.

■ Debtor does not seriously dispute that the intention of the parties in agreeing to the above portions of the Agreement was to provide support and maintenance for plaintiff and their minor child. Rather, he contends that a change in circumstances *subsequent to* execution of the Agreement require that his debt to plaintiff be discharged. Debtor claims that plaintiff plans to remarry in the near future; that their daughter no longer is a minor and now is capable of supporting herself; and that he has since remarried and is obligated to support his new wife and her four (4) children. In short, debtor claims that plaintiff and their daughter no longer need his financial support and that he is no longer able to provide it. According to debtor, it would be grossly inequitable in light of these changes in circumstances to refuse to grant him a discharge of the debt owed to plaintiff.

**28**

This argument is unpersuasive. Assuming that such changes in circumstances indeed have occurred, they are irrelevant to determining whether the debt owed by debtor to plaintiff is not dischargeable pursuant to 11 U.S.C. § 523(a)(5).

The focal point for evaluating an obligation pursuant to a divorce decree is the intent of the parties *at the time the obligation was assumed. Gianakas,* 917 F.2d at 763; *In re Chedrick,* 98 B.R. 731 (W.D.Pa.1989); *Horner v. Horner,* 125 B.R. 458 (Bankr.W.D.Pa.1991). Any changes in financial circumstances which may occur *after* such an agreement is signed are not relevant to the determination. *Chedrick,* 98 B.R. at 734. Moreover, consideration of such factors is not within the province of this court and may in fact be disruptive of such agreements:

> To allow a bankruptcy court to take into consideration the parties' changed financial circumstances in determining whether an obligation constitutes alimony, maintenance or support would be to rule that such agreements are dischargeable in nearly every case. In most cases, by the time a debtor has filed for bankruptcy, the economic condition of his or her ex-spouse will be at least on par with, if not more favorable than, that of the debtor, who, after all, has been driven to bankruptcy by his debts. The debtor's proper remedy in this case is not to avoid this debt through bankruptcy, but to petition the court with jurisdiction over his or her divorce decree for a modification of any such agreement in light of changed circumstances.

*Chedrick,* 98 B.R. at 734.

Payment of the mortgage pursuant to the Property Settlement Agreement executed by and between debtor and plaintiff is in the nature of support and maintenance as set forth in 11 U.S.C. § 523(a)(5) and therefore is not dischargeable.