**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1056-24

JERSEY MARKETS OF
WASHINGTON TOWNSHIP, LLC,

    Plaintiff-Appellant,

v.

WASHINGTON TOWN CENTER LLC,

    Defendant/Third-Party Plaintiff-
    Respondent,

v.

SILBERT REALTY & MANAGEMENT
COMPANY, INC., JOSEPH FERRANTE
and BRIAN SILBERT,

    Third-Party Defendants-
    Respondents.

_____

Submitted October 8, 2025 – Decided October 31, 2025

Before Judges Gummer and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-6855-19.

Jeffer, Hopkinson & Vogel, attorneys for appellant (Allan B. Thomspon and David H. Altman, on the briefs).

S. Robert Princiotto, attorney for respondent Washington Town Center LLC.

Schenck, Price, Smith & King, LLP, attorneys for respondents Silbert Realty & Management Company Inc., Joseph Ferrante and Brian S. Silbert (Jeffrey T. LaRosa, on the brief).

PER CURIAM

Plaintiff Jersey Markets of Washington Township (Jersey Markets) appeals from orders denying its motion to lift a stay and reinstate this litigation to the active trial calendar, granting the cross-motion of defendant Washington Town Center, LLC (WTC) to enforce a purported settlement, and awarding WTC counsel fees. Because we conclude the Law Division judge mistakenly denied Jersey Markets's motion to lift the stay and erred in finding the parties had entered into an enforceable settlement agreement, we reverse all orders on appeal and remand for further proceedings.

I.

In 2015, plaintiff Jersey Markets acquired a commercial lease between The Great Atlantic & Pacific Tea Company, Inc. (A&P) and WTC (the lease) pursuant to a sale order (the sale order) entered by the United States Bankruptcy

Court for the Southern District of New York (the Bankruptcy Court) in connection with A&P's bankruptcy petition.

Four years later, Jersey Markets filed a Law Division complaint, alleging WTC had wrongfully imposed common area maintenance (CAM) charges against it for environmental remediation costs incurred prior to acquiring the lease pursuant to the sale order. WTC filed a third-party complaint for damages against Brian Silbert, Joseph Ferrante and Silbert Realty & Management Company, Inc. (the Silbert defendants) based on their alleged failure to collect CAM charges from Jersey Markets pursuant to a real estate management and licensing agreement. Jersey Markets filed an amended complaint on March 17, 2022.

While the Law Division action was pending, Jersey Markets moved for relief in the Bankruptcy Court. On May 20, 2022, the Bankruptcy Court entered an order granting Jersey Markets's motion, finding "the [s]ale [o]rder bar[ed] [WTC] from seeking recompense from Jersey Markets for all costs and expenses of . . . remediation of environmental contamination at the [p]roperty . . . which occurred prior to [November 2, 2015]," the date Jersey Markets acquired the lease. WTC appealed to the United States District Court for the Southern

District of New York (the District Court), arguing the Bankruptcy Court erred in finding the sale order barred the CAM charges.

On June 22, the Law Division dismissed Jersey Markets's complaint without prejudice, subject to restoration upon adjudication of the District Court appeal.  The Law Division later vacated its June 22 order through entry of a consent order staying the litigation, subject to WTC moving to lift the stay after the District Court decided the pending appeal.  Almost a year later, the District Court affirmed the Bankruptcy Court order.  WTC further appealed to the United States Court of Appeals for the Second Circuit (Second Circuit).

On November 20, 2023, the Law Division granted another stay pending appeal and ordered in part as follows:

> . . . the within matter is hereby stayed pending the resolution and exhaustion of all appeals including the appeal to . . . the Second Circuit; and
>
> IT IS FURTHER ORDERED, that a motion to return the matter to the trial calendar shall be filed within [thirty] days after final judgment is rendered on all appeals.

While the Second Circuit appeal was pending, the parties engaged in settlement negotiations, as evinced by emails in the record.  On March 1, 2024, WTC's counsel advised that his proposed revisions to a previously circulated draft settlement agreement did not change any of the agreed-upon monetary

4

terms and asked Jersey Markets to sign the agreement stating, "[w]e would like to conclude this next week."  On March 5, Jersey Markets's counsel forwarded an edited version of the proposed agreement to WTC's counsel and cautioned that because his client had not yet reviewed the revisions, he had to "reserve the right to make wholesale changes to the draft."

On March 13, WTC's counsel sent a copy of the settlement agreement reflecting "agreed upon changes and those discussed but subject to client approval," highlighting that the proposed language in the parties' "limited mutual release" was "broader than the litigation issues."  On March 19, Jersey Markets's counsel sent another revised version of the proposed agreement to WTC's counsel with the message "[h]opefully this is it."  In response, WTC's counsel took issue with proposed language that allegedly contradicted the lease stating:

> I reviewed your changes in particular paragraph [nine] where you added that Jersey Markets is not responsible for costs of environmental remediation unless caused by Jersey Markets.  That is not what the lease says.  The lease provides that contribution rents include the costs of complying with environmental laws . . . . You are trying to change the terms of the lease and that was not the intention . . . . I view this as a material term.  I am afraid this can be a deal br[e]aker and I will bring this issue to my client's attention.

Jersey Markets agreed to remove the objected-to language.

5

A-1056-24

On March 22, counsel for Jersey Markets sent a revised "signature ready" agreement to WTC's counsel. On March 29, WTC's attorney forwarded a proposed agreement described as the "final offer," replacing paragraph nine with the following language:

> The parties also acknowledge and agree to comply with the opinion of [the District Court] that the Bankruptcy Court Order does not bar Jersey Markets [sic] responsibility for environmental claims that arise under the lease after 2015 or alter the provisions of the lease and the Bankruptcy Court . . . held that Jersey Markets purchased the [A&P's] interest in the lease free and clear of liabilities, obligations, claims or interests which arose prior to the Sale Order and the closing date . . . . In the event of any conflict between the [Bankruptcy Court order] and the opinion of [the District Court], the opinion of [the District Court] shall control.

The Second Circuit appeal was dismissed in a May 29 order based on WTC's failure to timely file its brief.

The record contains no evidence of further settlement negotiations from March 29 until June 26, when Jersey Markets's counsel wrote that "rumor has it that [WTC] wants us to try to come to some agreement on the last sticking point of the settlement agreement," referring to paragraph nine. The record contains no reply to that email.

6

A-1056-24

On July 9, Jersey Markets's counsel requested that WTC's counsel advise if WTC had "no interest in resolving the remaining issues." The record contains one last settlement communication from WTC's counsel, stating:

> I have been in communication with the Trustees and while they wish to have amicable relations with their tenants there is always a limit. As you know they did not pursue the appeal of the [B]ankruptcy [C]ourt decision and they had achieved a financial agreement with your client subject to execution of a settlement agreement. Since they did not pursue the [B]ankruptcy [C]ourt appeal and your client didn't appeal, [the District Court opinion] was the last word on this. The language of his decision was incorporated into my final version of the settlement agreement which I believe was sent on March 29th. The state court action was dismissed and either party had [thirty] days from a final judgment to restore the state court action. The [thirty]-day time period has expired. I am not sure what you are requesting but if you want me to see if the Trustees will sign my final version of the settlement agreement I will ask them.

On July 19, Jersey Markets moved to lift the stay of the Law Division action and return the matter to the active trial calendar. The following week, WTC cross-moved to enforce an unsigned settlement agreement and for an award of counsel fees.

On October 8, the Law Division denied Jersey Markets's motion to lift the stay and granted WTC's cross-motion to enforce the settlement agreement in an order accompanied by a written statement of reasons. As for Jersey Markets's

7

A-1056-24

motion, the Law Division found its November 20, 2023 order staying the litigation expressly permitted either party to file a motion to lift the stay within thirty days after a final judgment was rendered on all appeals. The Law Division determined that because the Second Circuit's order dismissing the appeal was final, the window for moving to lift the stay closed "around June 28, 2024." The Law Division found no reasonable basis to vacate the stay and reinstate the litigation, concluding Jersey Markets had not shown exceptional circumstances to justify filing the motion on July 19.

In granting WTC's cross-motion to enforce the settlement agreement, the Law Division imposed terms in the purported settlement agreement consistent with the District Court's affirmance of the Bankruptcy Court's May 20 order, finding it bound the parties under the doctrine of res judicata. After resolving that "sticking point," the Law Division found WTC and Jersey Markets had entered into a settlement agreement by consenting to all material terms and Jersey Markets had not demonstrated any "coercion, deception, fraud, undue pressure, or any inappropriate conduct" to vitiate the agreement.

On December 12, the Law Division granted WTC's cross-motion for an award of counsel fees and costs under the purported settlement agreement,

A-1056-24

ordering Jersey Markets to pay WTC $3,586.30. The December 12 order also dismissed all claims raised in the litigation with prejudice.

This appeal followed, with Jersey Markets arguing the parties did not enter into an enforceable settlement agreement; the Law Division abused its discretion in denying Jersey Markets's motion to lift the stay and reinstate the case; and because there was no settlement agreement, the Law Division erred in awarding fees. WTC argues for affirmance of the Law Division orders. The Silbert defendants contend the third-party complaint against them should remain dismissed with prejudice based on WTC's position that Jersey Markets's application to vacate the stay was untimely.

## II.

## A.

We reverse the Law Division's order denying Jersey Markets's motion to lift the stay and reinstate the litigation to the active trial calendar, concluding it was a mistaken exercise of discretion because it "rested on [the] impermissible basis" that the Second Circuit's dismissal of WTC's appeal was a "final judgment." State v. Chavies, 247 N.J. 245, 257 (2021).

We review the Law Division's denial of Jersey Markets's motion to lift the stay and reinstate the case to the active trial calendar for abuse of discretion.

Baskett v. Cheung, 422 N.J. Super. 377, 382-83 (App. Div. 2011). "A court abuses its discretion when its 'decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Chavies, 247 N.J. at 257 (quoting State v. R.Y., 242 N.J. 48, 65 (2020)).

Although a final judgment "dispos[es] of all issues as to all parties," Hudson v. Hudson, 36 N.J. 549, 553 (1962), dismissal without prejudice "adjudicates nothing." N.J. Div. of Youth & Fam. Servs. v. A.P., 408 N.J. Super. 252, 263 (App. Div. 2009) (quoting Malhame v. Borough of Demarest, 174 N.J. Super. 28, 30 (App.Div.1980)). Although federal appellate courts may dismiss a case for "appellate default," the dismissal is not an adjudication on the merits and appellate jurisdiction is retained. See Wapnick v. Comm'r of Internal Revenue, 365 F.3d 131, 132 (2d Cir. 2004) (noting that federal courts of appeal "ordinarily ha[ve] discretion to reinstate an appeal that has been dismissed for appellate default"). Accordingly, an administratively dismissed appeal remains eligible for potential reinstatement and review on its merits because it is not a final judgment.

The Second Circuit's order dismissing WTC's appeal was not a final judgment. The Law Division's November 2023 order stayed this litigation pending "resolution and exhaustion of all appeals including the appeal to the

. . . Second Circuit" subject to a restatement motion being filed within thirty days "after final judgment is rendered on all appeals." WTC's appeal was not "resolved" by the Second Circuit in a "final judgment." Instead, the Second Circuit appeal was administratively dismissed based on WTC's failure to timely file its brief. WTC had not "exhausted" the appeal because it was still eligible for potential reinstatement. Therefore, the thirty-day period for moving to vacate the stay and returning the litigation to the active trial calendar had not commenced at the time Jersey Markets filed its motion. Accordingly, we reverse the Law Division's denial of Jersey Markets's motion to lift the stay and reinstate the case.

The Silbert defendants argue separately that WTC's third-party complaint should remain dismissed even if this court reverses the Law Division orders on appeal, based on WTC's claim that the time for vacating the stay and reinstating the case had expired. We are unpersuaded that the Silbert defendants have established an entitlement to relief based on WTC's litigation posture. Based on our reversal of the order denying Jersey Markets's motion to lift the stay, we direct the Law Division on remand to enter an order reinstating the entire litigation, including WTC's third-party complaint, to the active trial calendar.

A-1056-24

B.

We conclude based on our de novo review that the Law Division erred in finding an enforceable settlement between Jersey Markets and WTC existed. Accordingly, we reverse the trial court's order granting WTC's cross-motion.

Formation of a settlement agreement, like formation of a contract, "requires an 'offer and acceptance' by the parties." GMAC Mortg., LLC v. Willoughby, 230 N.J. 172, 185 (2017) (quoting Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992)). "[I]t is requisite that there be an unqualified acceptance to conclude the manifestation of intent." Cumberland Farms Inc. v. N.J. Dep't of Env't Prot., 447 N.J. Super. 423, 439 (quoting Weichert, 128 N.J. 435-46). To create an enforceable contract, "'acceptance must be absolute' and 'unequivocally shown.'" Ibid. "[I]f parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract," but "[w]here the parties do not agree to one or more essential terms, however, courts generally hold that the agreement is unenforceable." Weichert, 128 N.J. 435.

"Our review of a contract, generally, is de novo, and therefore we owe no special deference to the trial court's . . . interpretation." Atalese v. U.S. Legal Servs. Grp., 219 N.J. 430, 445-46 (2014); see also Cumberland Farms, 447 N.J.

12

Super. at 438 (quoting <u>Nolan v. Lee Ho</u>, 120 N.J. 465, 472 (1990)) ("A settlement agreement between parties to a lawsuit is a contract").  Based on our de novo review, we conclude Jersey Markets and WTC did not resolve all issues and form an enforceable settlement agreement.  Neither party evinced intent to be bound through counsels' email communications.  As to their respective offers to resolve the litigation, neither party communicated "unqualified acceptance to conclude the manifestation of assent."  <u>Weichert</u>, 128 N.J. 435-36 (internal quotation marks omitted).  Thus, the parties did not mutually assent to an enforceable settlement agreement.

The record contains multiple emails referencing settlement discussions, from October 19, 2023, through July 9, 2024.  Counsel exchanged settlement agreement drafts and highlighted areas of agreement and disagreement, with one "sticking point" in particular—the provision incorporating the District Court's order construing the parties' lease agreement to prohibit pre-2015 environmental remediation CAM charges.  None of the emails contain unqualified acceptance on this issue by both parties.

WTC concedes Jersey Markets did not accept its March 29 "final offer," which incorporated the District Court's decision.  Yet, WTC argues "[w]here the parties to a contract fail to specify a term that is essential to a decision as to the

relative rights and responsibilities, the trial judge will attempt to supply that term in order to effectuate the parties' intent."

We are unconvinced that the decisional law cited by WTC allows a court to impose terms on a party to compel it to effectuate settlement. Both New Jersey Bank v. Palladino, 77 N.J. 33 (1978), and Onderdonk v. Presbyterian Homes of New Jersey, 85 N.J. 171 (1981) addressed whether the Court should imply a term to give effect to a concededly enforceable contract. See Palladino, 77 N.J. at 46-47 (applying a notice provision in a contract between parties to a commercial transaction to give effect to language "necessary to give business efficacy to the contract as written"); Onderdonk, 85 N.J. at 184, 186-88 (imposing a contractual obligation on management of a retirement community to provide financial disclosure statements to its residents).

Here, on de novo review we conclude the Law Division erred in applying res judicata to mandate that Jersey Markets adhere to a settlement agreement term to which it had not agreed. See Selective Ins. Co. v. McAllister, 327 N.J. Super. 168, 173 (App. Div. 2000) (review of res judicata determination is de novo). Where applicable, res judicata only bars a party from relitigating an issue. In re Est. of Gabrellian, 372 N.J. Super. 432, 446-47 (App. Div. 2004). The doctrine does not extend to the parties' settlement negotiations, where they

14

are free to contract around previously adjudicated issues, even after final judgment. See Puder v. Buechel, 183 N.J. 428, 438 (2005) (acknowledging "the 'right of competent, informed citizens to resolve their own disputes in whatever way may suit them'") (quoting Lerner v. Laufer, 359 N.J. Super. 201, 217 (App. Div. 2003)).

Accordingly, we reverse the Law Division's order enforcing the purported settlement and dismissing the litigation with prejudice, based on a lack of mutual assent to all material settlement terms. Because the fee award was predicated on the mistakenly enforced settlement, we reverse the Law Division's order awarding counsel fees and costs to WTC.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-1056-24